Docket No. 98813.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SHANTE RAZOR, Appellee, v. HYUNDAI MOTOR AMERICA, Appellant.

*Opinion filed February 2, 2006. –Modified upon denial of rehearing June 29, 2006.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, and Garman concurred in the judgment and opinion.

Justice McMorrow dissented from the denial of rehearing, with opinion.

Justice Karmeier dissented from the denial of rehearing, without opinion.

## OPINION

This appeal involves the federal Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (Act) (15 U.S.C. §2301 *et seq.* (2000)) and the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/1–101 *et seq.* (West 2000)). The only issues raised concern the propriety of the damages awarded to the plaintiff. The primary question is whether the circuit court acted properly in refusing to enforce a contractual clause prohibiting the award of consequential damages. There is also a sufficiency of the evidence challenge to the court's award of warranty damages. We

affirm in part, reverse in part, and remand.

## BACKGROUND

Plaintiff Shante Razor purchased a new Hyundai Sonata from Gartner Buick, Inc. (Gartner), on August 4, 2001. At the time she purchased the car, plaintiff also bought an optional remote starter and alarm system from an "options" booklet shown to her by the Gartner salesman. Gartner subcontracted the installation of this starter to Professional Sound Installers (ProSound). ProSound did not install it on the date plaintiff purchased her vehicle, but a few weeks later, on August 30, 2001.

The Sonata was the first new car plaintiff had ever purchased. It came with a five-year, 60,000-mile warranty, a copy of which was introduced into evidence. In pertinent part, the warranty provided as follows:

> "WHAT IS COVERED
>
> Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company or Hyundai Motor America (HMA) that is found to be defective in material or workmanship under normal use and maintenance, except any item specifically referred to in the section 'What is Not Covered.'
>
> * * *
>
> WHAT IS NOT COVERED
>
> * Damage or failure resulting from:
>
> –Negligence of proper maintenance as required in the Owner's Manual.
>
> –Misuse, abuse, accident, theft, water/flooding or fire.
>
> * * *
>
> –Any device and/or accessories not supplied by Hyundai.
>
> * * *
>
> * INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF TIME, INCONVENIENCE, LOSS OF USE OF THE VEHICLE, OR COMMERCIAL LOSS.
>
> * The duration of any implied warranties, including those

˘2˘

for MERCHANTABILITY and FITNESS FOR A PARTICULAR PURPOSE, are limited to the duration of this limited warranty.

Some states do not allow limitations on how long an implied warranty lasts, or the exclusion or limitation of incidental and consequential damages, so the limitations or exclusions set forth regarding this limited warranty may not apply to you. You may also have other rights which vary from state to state."

In late September 2001, plaintiff began experiencing difficulties with the vehicle. On September 26, plaintiff had the vehicle towed to Gartner for service because it failed to start when she turned the key. She experienced the same problem and again had the vehicle towed to Gartner for service on October 6, October 16, and October 25. On the latter occasion, Gartner kept the vehicle for more than two weeks, providing plaintiff with a rental car to use during the time the vehicle was out of her possession. Nevertheless, the problem happened again on November 21, the day before Thanksgiving, when plaintiff had taken the day off from work to go shopping for the holiday. After a technician came to her home and was himself unable to start the car, the vehicle was yet again towed to Gartner for attempted repairs.

Sometimes after being towed to Gartner the vehicle started normally, other times it did not. Gartner technicians attempted various different repairs on the different occasions that the car appeared before them, including replacing the starter, replacing the "ECU power relay," replacing the remote starter with an updated system, and replacing the "trans range switch" and "starter relay." Additionally, after the October 25 no-start, when the vehicle was kept for more than two weeks, ProSound removed the remote starter it had originally installed on plaintiff's vehicle and replaced it with an updated model. Plaintiff was not charged for any of the attempted repairs.

In December 2001, plaintiff filed suit against defendant, Hyundai Motor America (Hyundai). Plaintiff made claims against Hyundai pursuant to the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (2000)) for breach of written warranty and breach of implied warranty of merchantability. Plaintiff also alleged that Hyundai had violated the Illinois New Vehicle Buyer Protection Act (815 ILCS

380/1 *et seq.* (West 2000)).

The case initially went to arbitration. The arbitration panel found in plaintiff's favor, and entered an award of $6,500, plus attorney fees and costs. Hyundai rejected this award and demanded trial.

The case went to trial in February 2003. Plaintiff was the sole witness for her case, and most of the above undisputed facts are drawn from her testimony. In addition, plaintiff testified that she never saw the actual warranty until after she had purchased the car, because the warranty was contained in the owner's manual, which she saw for the first time in the glove box of her vehicle when she drove it off the lot. Plaintiff's purchase contract, a copy of which was introduced into evidence, does not appear to contain or refer to the vehicle warranty. When asked on cross-examination if she had seen the warranty on a placard at Gartner , plaintiff testified that she had not. Plaintiff testified that she had performed all required maintenance on her car, had never been in an accident or been the victim of vandalism, and that no one other than Gartner  had ever performed any repairs on the vehicle.

During plaintiff's direct examination, defense counsel objected when plaintiff's counsel inquired regarding her purchase of prior automobiles. During a lengthy sidebar, counsel explained that he was attempting to lay a foundation in order to ask her how much the car's value to her had decreased because of the problems she had with it. The court ruled that plaintiff could not answer such a question. The court indicated that plaintiff could testify "as to what her feelings were, what her frame of mind was and the impact of the slow [*sic*] start situation on her personal feelings. *** But as to 'the value of the vehicle would have been such and such because of the no start conditions,' I don't see how you're going to go that far with it." Plaintiff was permitted to testify that the purchase price of her Sonata was $16,522, and that she would eventually have paid a total of $21,249 for the car, including finance charges.

Plaintiff testified that the vehicle did not provide her the type of transportation she expected. She testified, "[I]t's a brand new car. I expected it to be perfect, flawless or minimal problems, certainly not the ones that I encountered here." She testified that she would not purchase the same vehicle today, because it was "proven unreliable," and she would not today pay the price she had originally paid for the

vehicle, because "given the problems that this vehicle–that I have had with this vehicle or the problems the vehicle has had, that's like a used car. I would not pay that for a new car with used problems as it were." Plaintiff also testified that the problems she had with the car had caused her considerable inconvenience, including missing days of work. However, on cross-examination, plaintiff admitted she was still driving the car at the time of trial–May 2003–and had not experienced any difficulties with it since December 2001.

Plaintiff offered her exhibits into evidence and rested. Hyundai moved for a directed verdict, which the court denied in its entirety. During argument on the motion, the court initially ruled that Hyundai's disclaimer of incidental and consequential damages was not unconscionable, but shortly thereafter the court reversed itself and ruled that the disclaimer was unconscionable and would not be enforced. When defense counsel inquired of the court as to the basis for its ruling that the disclaimer was unconscionable, the court responded:

> "THE COURT: The number of attempts that the plaintiff attempted for repairs. The fact that the plaintiff needed, used or intended to use the vehicle for transportation to and from work. The fact that the plaintiff was unable to use the vehicle for the time period in question for it's [*sic*] intended use."

After the court denied Hyundai's motion for a directed verdict, the defense called its sole witness, Randy Wood. Wood is treasurer and part owner of ProSound, the company which installed plaintiff's alarm and remote starter system. He testified that ProSound had inspected the system installed on plaintiff's vehicle on more than one occasion, and no problem was ever found. Although ProSound did replace plaintiff's system with the newest model, this was for customer satisfaction purposes only, because ProSound never found anything wrong with plaintiff's system. He did admit on redirect examination that plaintiff's vehicle "may have" had a weak signal coming through its "tack [*sic*] wire," and if that condition existed it could cause problems for the ProSound system. Wood also testified that the system could itself prevent the car from starting, if one attempted to start it with the key after locking the car with the remote control.

After the defense rested, Hyundai renewed its motion for a directed verdict, including specifically arguing that the court should

not have reversed its initial conclusion regarding the enforceability of the consequential damages disclaimer. The court denied Hyundai's motions and submitted the case to the jury.

The jury returned a verdict for plaintiff on the breach of warranty claims, awarding her $5,000 in warranty damages for the diminished value of the Sonata due to the defects, and $3,500 in consequential damages for aggravation and inconvenience and loss of use. The jury also answered "yes" to a special interrogatory which asked, "Did plaintiff prove the aftermarket remote starter-alarm system was not the cause of the no-start condition?" The jury found in defendant's favor, however, on plaintiff's claim under the New Vehicle Buyer Protection Act. The court awarded plaintiff $12,277 in attorney fees and costs.

The appellate court affirmed in all respects. 349 Ill. App. 3d 651.

Hyundai petitioned for leave to appeal to this court (see 155 Ill. 2d R. 315(a)), which we granted.

ANALYSIS

Before this court the issues have been pared down. Hyundai neither challenges the jury's conclusions regarding causation nor contends that plaintiff failed to prove that the warranty failed of its essential purpose. Plaintiff does not cross-appeal the jury verdict in Hyundai's favor on her New Vehicle Buyer Protection Act claim. Neither party raises any issues regarding the circuit court's conduct of the trial.

Rather, the arguments now focus exclusively on damages. Hyundai first argues that the circuit court erred in refusing to enforce the contractual exclusion of incidental and consequential damages. Hyundai argues that the mere fact that its warranty failed of its essential purpose does not invalidate the consequential damages disclaimer, and contends that plaintiff introduced no evidence to support the circuit court's ruling that the disclaimer should not be enforced. Second, Hyundai contends that there was insufficient evidence to support the jury's warranty damage award. Finally, Hyundai argues that if this court reverses both damage awards, we must also reverse the circuit court's award of fees and costs. Plaintiff raises no additional arguments. Thus, these are the only issues before us.

## I. Enforceability of Hyundai's Disclaimer of Incidental/Consequential Damages

The main issue before this court is the enforceability of Hyundai's disclaimer of incidental and consequential damages. Hyundai argues that the disclaimer is independent of the limited remedy, and the disclaimer may stand even if its limited remedy failed of its essential purpose. Hyundai contends that the disclaimer may be overridden only if it is itself unconscionable, a standard which Hyundai argues has not been met in the instant case. Plaintiff responds that the disclaimer should fall with the limited warranty, and contends that even if this court finds them to be severable, the disclaimer in this case was unconscionable.

### A. *"Independent" vs. "Dependent" Approach to Provisions Limiting Remedy and Excluding Consequential Damages*

As previously noted, plaintiff's claim was brought under the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (1994)). Under the Act, consumers who have been damaged by any warrantor's failure to comply with its obligations under a written warranty may bring suit "in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. §2310(d)(1)(A) (1994).

The Act itself does not determine the enforceability of the consequential damages disclaimer, however. The Act does supersede state law, but only to the extent that state law is inconsistent with the Act. 15 U.S.C. §2311 (1994); see *Sorce v. Naperville Jeep Eagle*, 309 Ill. App. 3d 313, 323 (1999). The warranty at issue in this case was a limited warranty, and the Act does not set out requirements for limited warranties.[1] Rather, the Act merely prescribes certain requirements with which warranties must comply in order to be called "full" warranties. See 15 U.S.C. §2303(a) (1994) (a warranty which meets the standards set forth in section 4 of the Act (15 U.S.C.

---

[1]The Act does permit the Federal Trade Commission to establish general disclosure requirements for the terms and conditions of all warranties, *e.g.*, that they must clearly identify the warrantors, the warrantees, the products or parts covered, etc. See 15 U.S.C. §2302 (1994). However, the Act itself does not directly establish any such disclosure requirements, nor do the parties raise any arguments regarding any requirements the FTC may have established.

§2304 (1994)) "shall be conspicuously designated a 'full (statement of duration) warranty,' " and a warranty which does not meet the standards set out in section 4 of the Act "shall be conspicuously designated a 'limited warranty' ").

Accordingly, to determine the enforceability of a consequential damages disclaimer in a limited warranty, we look to state law. See *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 62 (2002); *Sorce*, 309 Ill. App. 3d at 325. In Illinois, the sale of goods is governed by article 2 of the Uniform Commercial Code (UCC). 810 ILCS 5/1‒101 *et seq.* (2000). Central to this case is section 2‒719 of the UCC, which governs "Contractual modification or limitation of remedy":

> "(1) Subject to the provisions of subsections (2) and (3) of this Section and of the preceding section on liquidation and limitation of damages,
>
> > (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
> >
> > (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." 810 ILCS 5/2‒719 (West 2000).

In this case, Hyundai's limited warranty contained both a limitation of remedy and an exclusion of consequential damages. The warranty expressly limited the buyer's remedies to repair and replacement of nonconforming parts, as permitted under section 2‒719(1)(a). However, the warranty additionally provided that

incidental or consequential damages were "not covered," as permitted under section 2–719(3).

Plaintiff claimed–and the jury found–that the Hyundai limited remedy had failed of its essential purpose because of the persistence of the no-start problem with plaintiff's car. Hyundai does not question this factual determination in this appeal. Thus, according to section 2–719(2) of the UCC, plaintiff was entitled to remedy "as provided in this Act." 810 ILCS 5/2–719(2) (West 2000). See also 810 ILCS Ann. 5/2–719, Uniform Commercial Code Comment 1, at 488 (Smith-Hurd 1993) ("under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article").

This does not end the inquiry insofar as consequential damages are concerned, however. Subsection (3) of section 2–719 is part of "this Act"–*i.e.*, the UCC–and subsection (3) permits a seller to limit or exclude consequential damages unless to do so would be unconscionable. It still must be determined, therefore, whether a limited remedy failing of its essential purpose defeats a disclaimer of consequential damages.

There are two main schools of thought on the issue. Some courts and commentators conclude that a limited remedy failing of its essential purpose operates to destroy any limitation or exclusion of consequential damages in the same contract. This approach is known as the "dependent" approach, because the enforceability of the consequential damages exclusion depends on the survival of the limitation of remedy.

Our appellate court issued one of the seminal cases for the dependent approach, *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388 (1970). There, the plaintiff purchased a tractor, pursuant to a purchase agreement which limited his remedy to repair and replacement and also disclaimed consequential damages. The tractor had severe mechanical problems and was in a repair shop for over a year. Plaintiff filed suit, seeking consequential damages for the business he claimed to have lost because defendants were "wilfully dilatory or careless and negligent in making good their warranty." The court concluded:

> "The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the

obligations of the warranty destroys its benefits. The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them." *Adams*, 125 Ill. App. 2d at 402-03.

In defense of the dependent approach, the United States District Court for the Northern District of Illinois has reasoned:

"[P]laintiff also was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid." *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39, 43-44 (N.D. Ill. 1970) (applying Illinois law).

See also, *e.g.*, *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243, 247 n.7 (Mo. App. 1978) (and cases cited therein); *Pierce v. Catalina Yachts*, 2 P.3d 618, 622 n.14 (Alaska 2000) (collecting cases).

Plaintiff suggests that the dependent approach is followed by a majority of jurisdictions to consider the issue. While this may have been true 15 to 20 years ago[2] (see D. Goetz, *Special Project: Article Two Warranties in Commercial Transactions: An Update*, 72 Cornell L. Rev. 1159, 1307 (1987) ("A majority of cases have answered correctly that the failure of an exclusive remedy voids the

---

[2]We note that all of the law review articles and all but one of the non-Illinois court decisions plaintiff cites were decided in 1990 or before. The sole post-1990 foreign authority plaintiff cites, *Bishop Logging Co. v. John Deere Industrial Equipment Co.*, 317 S.C. 520, 455 S.E.2d 183 (1995), did not follow the dependent approach, but rather the "case-by-case" approach. *Bishop Logging*, 317 S.C. at 533-37, 455 S.E.2d at 191-93.

consequential damages exclusion clause")), it is no longer the case. Rather, the majority of jurisdictions now follow the other of the two main approaches, the "independent" approach. 1 E. Farnsworth, Farnsworth on Contracts §4.28(a), at 605-06 (3d ed. 2004) ("some courts have gone so far as to hold that if UCC 2–719(2) applies, related limitations on remedies should all fall like a house of cards, so that a provision barring recovery of consequential damages would also be invalidated. However, most courts have rejected this view"); *Pierce*, 2 P.3d at 622 ("the majority of jurisdictions view these subsections to be independent") (collecting cases). This school of thought holds that a limitation of consequential damages must be judged on its own merits and enforced unless unconscionable, regardless of whether the contract also contains a limitation of remedy which has failed of its essential purpose.

A representative case adopting the independent approach is *Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980) (applying New Jersey law). There, the court rejected the dependent approach, holding:

> "[T]he better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable. This poses no logical difficulties. A contract may well contain no limitation on breach of warranty damages but specifically exclude consequential damages. Conversely, it is quite conceivable that some limitation might be placed on a breach of warranty award, but consequential damages would expressly be permitted.
>
> The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. [Citations.] The [UCC], moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive."
> *Chatlos Systems*, 635 F.2d at 1086.

See also *Pierce*, 2 P.3d at 622-23 (adopting independent approach),

622 n.16 (collecting cases).

A third approach, "applied relatively infrequently," is the "case by case" approach. D. Hagen, Note, *Sections 2–719(2) & 2–719(3) of the Uniform Commercial Code: The Limited Warranty Package & Consequential Damages*, 31 Val. U.L. Rev. 111, 131 (1996). Under this approach, "[a]n analysis to determine whether consequential damages are warranted must carefully examine the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract." *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir. 1978).

Neither of the parties to this appeal argues in favor of the case-by-case approach, which has been criticized as "not supported by the [UCC] or its official comments." 31 Val. U.L. Rev. at 132. The authorities espousing it have sometimes confused it with the "independent" approach (see, *e.g.*, *Smith v. Navistar International Transportation Corp.*, 957 F.2d 1439, 1443-44 (7th Cir. 1992) (erroneously stating that *Chatlos Systems* had adopted the case-by-case approach). Moreover, although one of the factors cited in favor of the case-by-case approach is that it "allows some measure of certainty" (*Smith*, 957 F.2d at 1444), it has been observed that it in fact "provides *less* predictability than the dependent or independent approaches." (Emphasis added.) 31 Val. U. L. Rev. at 131.

Additionally, notwithstanding that the case-by-case approach might appear to tread a middle ground between the dependent approach (which is generally more favorable for buyers) and the independent approach (which is generally more favorable for sellers), this is not necessarily so. In *AES Technology*, where the case-by-case approach originated, the contract at issue contained no disclaimer or limitation of consequential damages, only a limitation of remedy. The court affirmed the trial court's conclusion that the limited remedy had failed of its essential purpose. *AES Technology*, 583 F.2d at 940. However, the court inferred a consequential damage disclaimer from the limitation of remedy (*AES Technology*, 583 F.2d at 941 n.9) and proceeded to enforce that inferred disclaimer against the buyer even though the limited remedy had failed of its essential purpose, because "the express provisions of the contract and the factual background" indicated that the parties intended for the buyer to "bear the risk of the project" (*AES Technology*, 583 F.2d at 941). The court inferred a consequential damages disclaimer where none existed, struck the

language from which the disclaimer was inferred, then enforced the disclaimer against the buyer anyway, based on the court's understanding of "the factual background." This result could not have been reached under either the dependent or independent approach, and we find the analysis difficult to reconcile with the UCC itself.

We find the case-by-case approach injects uncertainty into the UCC, an area of the law in which uniformity and certainty are highly valued. See 810 ILCS 5/1–102(2)(c) (West 2000); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491 (1996). It leads to results which are difficult to reconcile with the provisions of the UCC, and has been criticized as having no basis in the UCC or its comments. 31 Val. U.L. Rev. at 132. We decline to adopt it.

Rather, we agree with the reasoning in *Chatlos Systems*, and adopt the independent approach. The independent approach is more in line with the UCC and with contract law in general. Nothing in the text or the official comments to section 2–719 indicates that where a contract contains both a limitation of remedy and an exclusion of consequential damages, the latter shares the fate of the former. See J. Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of UCC 2–719(2)*, 65 Cal. L. Rev. 28, 92 (1977) (failure of essential purpose is separate and independent from validity of consequential damage disclaimer); E. Eissenstat, Note, *Commercial Transactions: UCC §2–719: Remedy Limitations and Consequential Damage Exclusions*, 36 Okla L. Rev. 669, 677 (1983) ("a consequential damages disclaimer should be governed by its own [UCC] standard of unconscionability, independent of whether a limited remedy has failed"). To the contrary, as noted in *Chatlos Systems*, the different standards for evaluating the two provisions–"failure of essential purpose" versus "unconscionability"–strongly suggest their independence. See also 1 White and Summers' Uniform Commercial Code §12–10(c), at 668 (4th ed. 1995) (endorsing the independent approach as most in accord with considerations of freedom of contract).

When a contract contains a limitation of remedy but that remedy fails of its essential purpose, it is as if that limitation of remedy does not exist for purposes of the damages to which a plaintiff is entitled for breach of warranty. See 810 ILCS 5/2–719(2) (West 2000) ("remedy may be had as provided in this Act"). When a contract contains a consequential damages exclusion but no limitation of

remedy, it is incontrovertible that the exclusion is to be enforced unless unconscionable. 810 ILCS 5/2–719(3) (West 2000). Why, then, would a limitation of remedy failing of its essential purpose destroy a consequential damages exclusion in the same contract? We see no valid reason to so hold.

Indeed, the dependent approach operates to nullify all consequential damage exclusions in contracts which also contain limitations of remedy. For if the limited remedy fails of its essential purpose, the consequential damages exclusion would also automatically fall–regardless of whether it is unconscionable–and if the limitation of remedy does not fail of its essential purpose, the buyer would not be entitled to consequential damages in any event, he would be entitled only to the specified limited remedy.

The two provisions–limitation of remedy and exclusion of consequential damages–can be visualized as two concentric layers of protection for a seller. What a seller would most prefer, if something goes wrong with a product, is simply to repair or replace it, nothing more. This "repair or replacement" remedy is an outer wall, a first defense. If that wall is breached, because the limited remedy has failed of its essential purpose, the seller still would prefer at least not to be liable for potentially unlimited consequential damages, and so he builds a second inner rampart as a fallback position. That inner wall is higher, and more difficult to scale–it falls only if unconscionable.

The independent approach has not been immune to criticism, of course. The Eighth Circuit has rejected the independent approach under Minnesota law, based on the concern that "a buyer when entering into a contract does not anticipate that the sole remedy available will be rendered a nullity, thus causing additional damages." *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1373 (8th Cir. 1977) (applying Minnesota law). Additionally, one commentator has chastised the independent approach for "rel[ying] on imprecise assumptions about the parties' intent and an unpersuasive interpretation of section 2–719." K. Murtagh, Note, *UCC Section 2–719: Limited Remedies and Consequential Damage Exclusions*, 74 Cornell L. Rev. 359, 362 (1989) (concluding that independent approach is "inherently weak"). This article suggests that by engaging in "literal construction of the parties' contract," the independent approach "encourages overly formalistic drafting," which "unfairly

favors the party who can afford sophisticated bargaining techniques to ensure the use of his contract terms." 74 Cornell L. Rev. at 363. The article also contends that it is erroneous to conclude that the parties intend to shift the risk of consequential loss to the buyer, because "[t]he language structure itself does not indicate that the parties even considered the possibility of the ineffective limited remedy." 74 Cornell L. Rev. at 364. *Adams* and *Jones & McKnight*, two of the earliest cases adopting the dependent approach, implicitly concluded that the independent approach was simply unfair to the buyer. See *Adams*, 125 Ill. App. 2d at 402-03; *Jones & McKnight*, 320 F. Supp. at 43-44.

We recognize these objections to the independent approach, but do not find them compelling. The reasoning in *Adams* and *Jones & McKnight*, for example, is based on the seller's failure to perform being willful. This incorporates considerations of bad faith on the part of the seller. As we discuss below, the seller's bad faith is a possible basis for finding enforcement of a limitation of consequential damages to be unconscionable. However, the dependent approach strips away limitations of consequential damages whenever a limited remedy fails of its essential purpose, without regard to the good or bad faith of the seller, which we believe goes too far.

The objections to the independent approach in *Soo Line* and the law review article noted above are similarly unpersuasive. Both argue that the independent approach is unfair because the buyer may not intend to renounce consequential damages when the limited remedy has failed of its essential purpose. *Soo Line*, 547 F.2d at 1373; 74 Cornell L. Rev. at 364. But this seems to ignore the plain language of the contract in a fundamental way–for if the buyer does not intend to renounce consequential damages when the limited remedy has failed, in what context *could* the disclaimer of consequential damages operate? As noted above, we believe this is a fundamental defect in the dependent approach, that it renders the disclaimer of consequential damages an utter nullity. If a limited remedy has *not* failed of its essential purpose, that is of course the buyer's only remedy, by definition–this is what it means to have a limited remedy. So in this circumstance a disclaimer of limited damages would be of no effect because it would be redundant. If, as the above critics argue, the disclaimer of limited damages ought not to be enforced when the limited remedy *has* failed of its essential purpose, the language would

never have any effect. Moreover, to the extent that the independent approach encourages parties to pay attention in the drafting process (see 74 Cornell L. Rev. at 363), we see this as a point in favor of the independent approach, rather than the contrary.

Plaintiff objects that Illinois has always followed the dependent approach, and for this court now to endorse the independent approach would unnecessarily reverse "thirty-five (35) years of commercial law in the State of Illinois law that has repeatedly embraced the 'dependent' approach." We disagree with the premise of this argument. It is true that *Adams* endorsed the dependent approach over 35 years ago. See *Adams*, 125 Ill. App. 2d at 402-03. But intervening case law from our appellate court has not consistently followed the dependent approach. More recently, for instance, our appellate court stated:

> "In remedy limitation cases, the court must make three inquiries:
>
> > '(1) whether the contract limited the remedy to repair or replacement; (2) whether, if the remedy were so limited, it failed of its essential purpose; and (3) whether, *if the limited remedy failed of its essential purpose*, consequential damages may be recovered because their exclusion is *unconscionable*.' " (Emphases added.) *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 256 (2000), quoting *Myrtle Beach Pipeline Corp. v. Emerson Electric Co.*, 843 F. Supp. 1027, 1041 (D.S.C. 1993).

Regardless of whether this language is *dictum*, as plaintiff argues, it is a clear endorsement of the independent approach. Other case law has evinced a confusion as to whether the independent or dependent approach is to be followed. Compare *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 61 (2002) (quoting the above "three inquiries" language from *Intrastate Piping*), with *Lara*, 331 Ill. App. 3d at 63 (holding that "[i]f *** the limited remedy of replacement or repair of defective parts failed of its essential purpose, the express warranty's exclusion of consequential and incidental damages will have no effect and those damages will be available to plaintiff pursuant to the UCC"). We note also that in that portion of its opinion which endorsed the dependent approach, the *Lara* court–like *Adams*–cited section 2–719(2) of the UCC but failed to acknowledge

˘16˘

section 2–719(3). See *Lara*, 331 Ill. App. 3d at 63; *Adams*, 125 Ill. App. 2d at 403. Illinois decisions dealing with the independent/dependent issue under the UCC have not been consistent. We believe that it is appropriate and necessary that we decide this question.

Moreover, we disagree with the reasoning, although not necessarily the result, in *Adams*. There, in refusing to enforce the consequential damages limitation, our appellate court focused on the allegedly tortious nature of defendants' conduct which caused the limited remedy to fail of its essential purpose. The court concluded that defendants were entitled to none of the protections included in the contract because they had "repudiat[ed] *** their obligations under the warranty." This implies that the sellers' alleged bad faith in repudiating their obligations under the warranty played a part in the analysis–but the dependent approach does not take the seller's good or bad faith into account. Under the dependent approach, the seller is stripped of the protection of a consequential damages disclaimer once a limited remedy has failed of its essential purpose, *regardless* of the seller's good or bad faith.

A seller's deliberate or negligent failure to supply a limited remedy can be taken into consideration in determining whether enforcement of a consequential damages waiver is unconscionable. The unconscionability determination is not restricted to the facts and circumstances in existence at the time the contract was entered into. *Pierce*, 2 P.3d at 623, quoting *Chatlos Systems*, 635 F.2d at 1087 ("in addition to inquiring into the circumstances at the time of the sale, courts examine the case 'from the perspective of later events' "). Indeed, section 2–719(3) itself expressly provides that matters which become known only subsequent to the drafting of the contract–*i.e.*, the type of injuries suffered as a result of breach–are relevant to the unconscionability calculus. 810 ILCS 5/2–719(3) (West 2000) ("Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not"); see also 810 ILCS 5/2–719, Uniform Commercial Code Comment 3, at 488 (Smith-Hurd 1993) ("clauses limiting or excluding consequential damages *** may not *operate* in an unconscionable manner" (emphasis added)). As many of the authorities favoring the dependent approach have noted, there is rarely any basis for concluding that when the parties entered into their contract, the buyer intended to assume the risk of

the seller's willful or negligent default on his only obligation for breach of warranty.[3] It may well be that in a case such as *Adams*, where the defendant is alleged to have acted in bad faith, the correct result would be to declare a consequential damages exclusion unenforceable. See *McNally Wellman Co. v. New York State Electric & Gas Corp.*, 63 F.3d 1188, 1198 n.9 (2d Cir. 1995) (noting that "section 1–203 of the UCC, which states that '[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement,' " supports the conclusion that bad faith could vitiate a section 2–719(3) consequential damages exclusion). Accordingly, we believe that a plaintiff must be allowed to point to a defendant's conduct, or any other circumstance which he believes would make enforcement of a consequential damages exclusion unconscionable. But the plain language of the UCC indicates that this step, of evaluating whether the exclusion is unconscionable, must be taken before a contractual consequential damages exclusion may be done away with. See 810 ILCS 5/2–719(3) (West 2000).

We conclude that the independent approach is the better-reasoned and more in accordance with the plain language of the UCC. This conclusion is buttressed by the fact that a majority of jurisdictions to consider the issue have adopted the independent approach. Illinois generally follows the majority interpretation of UCC provisions, in order to serve the underlying UCC policy of " 'mak[ing] uniform the law among the various jurisdictions.' " *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491 (1996), quoting 810 ILCS 5/1–102(2)(c) (West 1994). Contractual limitations or exclusions of consequential damages will be upheld unless to do so would be unconscionable, regardless of whether the contract also contains a limited remedy which fails of its essential purpose.

## B. *Unconscionability*

Accordingly, the mere fact that the jury found the limited remedy

---

[3]However, as we previously observed, we do not find this to be a compelling argument for the dependent approach itself, which strikes consequential damage limitations regardless of the seller's good faith.

to have failed of its essential purpose does not destroy the provision in the warranty excluding consequential damages. However, this does not mean that the exclusion of consequential damages will necessarily be upheld. Rather, that provision must be judged on its own merits to determine whether its enforcement would be unconscionable. 810 ILCS 5/2–719(3) (West 2000).

A determination of whether a contractual clause is unconscionable is a matter of law, to be decided by the court. 810 ILCS 5/2–302(1) (West 2000); *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980). Unconscionability can be either "procedural" or "substantive" or a combination of both. *Frank's Maintenance*, 86 Ill. App. 3d at 989. But see *Rosen v. SCIL, LLC.*, 343 Ill. App. 3d 1075, 1081 (2003) (for a term to be found unconscionable, it must be both procedurally and substantively unconscionable); 1 Farnsworth, Farnsworth on Contracts §4.28, at 585 (3d ed. 2004) ("Most cases of unconscionability involve a combination of procedural and substantive unconscionability," although contracts may be voidable without substantive unconscionability if the procedural unconscionability is sufficiently severe). Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power. *Frank's Maintenance*, 86 Ill. App. 3d at 989. Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor. *Rosen*, 343 Ill. App. 3d at 1081.

Hyundai argues that plaintiff introduced no evidence to support the trial court's determination that the consequential damages exclusion was unconscionable. We disagree. The record reveals a number of facts which tend to support a finding of unconscionability. The warranty was entirely preprinted. Plaintiff–a consumer–had no hand in its drafting, and no bargaining power at all with respect to its terms. Moreover, the clause in question is intended to limit the drafter's liability. Each of these facts leads this court to disfavor the clause. See *Pierce*, 2 P.3d at 623 ("Courts are more likely to find unconscionability when a consumer is involved, when there is a disparity in bargaining power, and when the consequential damages clause is on a pre-printed form"); *Frank's Maintenance*, 86 Ill. App. 3d at 992 (although UCC permits clauses limiting remedies, such

clauses are disfavored and must be strictly construed). However, we need not–and we do not–hold that these general circumstances alone or in combination render the clause unconscionable.

An additional fact particular to this case  tips the balance in plaintiff's favor. That is the lack of evidence that the warranty, which contained the disclaimer of consequential damages, had been made available to the plaintiff at or before the time she signed the sale contract. The warranty and its consequential damages exclusion were contained in the owner's manual, which was placed in the glove compartment of the car, where it was unavailable to the consumer until after she took delivery. No portion of the  sale contract contained in the record before us even mentions the warranty. Moreover, plaintiff testified without contradiction that she never saw any part of the written warranty, much less the disclaimer of consequential damages, until she looked in her owner's manual after she had signed the contract and driven the car off the lot. Thus, *on this record*, we must conclude that the warranty information, including the disclaimer of consequential damages, was not made available to the plaintiff at or before the time she signed the purchase contract.

In its petition for rehearing, Hyundai argues that the disclaimer is not procedurally unconscionable because it was written in capital letters in "plain, simple, understandable language, not legalese," that was "easy to see and easy to read." These aspects of the disclaimer are irrelevant, however, in the case of a limitation of liability withheld from the buyer until after the purchase contract has been signed. It simply does not matter how large the type was or how clearly the disclaimer was expressed if the consumer did not have the opportunity to *see* the language before entering into the contract to purchase the car. See *Frank's Maintenance*, 86 Ill. App. 3d at 991 n.2. As previously noted, procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it. Surely, whatever other context there might be in which a contractual provision would be found to be procedurally unconscionable, that label must apply to a situation such as the case at bar where plaintiff has testified that she never saw the clause  nor is there any basis for concluding that plaintiff *could* have seen the clause, before entering into the sale contract. "[A] limitation of liability given to the buyer after he makes the contract is ineffective."

*Frank's Maintenance*, 86 Ill. App. 3d at 991 n.2.

In seeking a rehearing, Hyundai protests that our conclusion that in this case the disclaimer was unconscionable and thus unenforceable will have catastrophic effects on commerce. The basis of Hyundai's complaint is that the warranty, which runs between Hyundai and plaintiff, is not a term of the sale contract, which was formed between Gartner and plaintiff and to which Hyundai is not a party. Hyundai argues that it is wholly unfair to condition enforceability of the terms of the warranty on anything having to do with the sale contract, because there is no evidence that Hyundai has any control over the terms of the sale contract. Hyundai protests that we have erred in holding that the disclaimer in its warranty is unenforceable simply because that warranty was not included in the sale contract. Some clarification is in order.

First, Hyundai offers no support for its argument that it is unfair to bind a manufacturer by the actions of a seller. Our own research has not unearthed a great deal of sympathy for such an argument. See, *e.g.*, *Wilbur v. Toyota Motor Sales, U.S.A.*, 86 F. 3d 23 (2d Cir. 1996) (refusing to enforce disclaimer in manufacturer's warranty because of date which dealer entered in sale contract). More importantly, Hyundai's arguments proceed from a misunderstanding of our holding. We did not intend to condition enforceability of the provisions of manufacturer's warranties on their inclusion in sale contracts *per se*. Rather, our concern was that *in this case*, there was no evidence that plaintiff had been by *any* means provided with the terms of the warranty–specifically the disclaimer of consequential damages–at or before the time she signed the sale contract. One of the ways in which plaintiff could potentially have received the warranty is if it had been contained in the sale contract which she signed, but this is not the only possibility. Our point was simply that notice of the contents of the warranty must be provided to the purchaser at or before the time that the purchase occurs, and the evidence in this case is wholly and completely to the contrary.

Perhaps inadvertently, Hyundai has validated our legal analysis in its petition for rehearing. As Hyundai there admits, the Magnuson-Moss Act requires the Federal Trade Commission (FTC) to enact a regulation "requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him." 15 U.S.C.

§2302(b)(1)(A) (1994). Pursuant to this authority, as Hyundai notes, the FTC has enacted a regulation that provides:

> "*A written warranty* must be 'part of the basis of the bargain.' This means that it *must be conveyed at the time of sale of the consumer product* and the consumer must not give any consideration beyond the purchase price of the consumer product in order to benefit from the agreement." (Emphasis added.) 16 C.F.R. §700.11(b) (2000).

We appreciate Hyundai directing our attention to this regulation because it reveals that although our focus was correct–a buyer must at least be given the opportunity to learn the terms of a warranty at the time the sale contract is signed–we actually gave plaintiff too *little* protection in our initial disposition of the case. We would have been content if the warranty was merely *referred to* in the sale contract, whereas the FTC regulation clearly and unambiguously requires that the written warranty *itself* must be *conveyed* at the time of sale. 16 C.F.R. §700.11(b) (2000). So far as the record in this case is concerned, no such conveyance took place.

Again, the result in this case rests wholly on the evidence adduced and the arguments raised in this case. Hyundai contends on rehearing that it did "provid[e] the limited warranty at the time [plaintiff] bought the Sonata," but the record in this case does not bear that assertion out–there is no evidence, documentary or testimonial, to support Hyundai's bald assertion that plaintiff was provided a copy of the warranty at the time the sale contract was signed. This is not a matter of shifting the burden of proof to Hyundai (as Hyundai additionally complains on rehearing),[4] because the fact

---

[4]Hyundai also objects on rehearing that it is unfair to uphold the circuit court's ruling on unconscionability because plaintiff never argued unconscionability in her complaint. Hyundai protests that, because of this, Hyundai did not receive a fair chance to present evidence on the validity of its exclusion, and argues that we ought to treat the unconscionability argument as waived. However, we note that the court's initial ruling regarding unconscionability occurred at the time of Hyundai's motion for a directed verdict at the close of plaintiff's case, before Hyundai began its case–Hyundai therefore did indeed have a chance to put on evidence during its case in chief, if it had desired to do so. More importantly, Hyundai never argued at the circuit court level that plaintiff had waived unconscionability,

is that plaintiff did produce affirmative evidence that she had never seen the warranty until after she had purchased the vehicle. Plaintiff directly and unequivocally so testified during her case in chief. Hyundai simply failed to rebut this evidence when it had the chance. The only possible conclusion based on the evidence adduced by both parties at trial is that, in direct violation of section 700.11(b) (16 C.F.R. §700.11(b) (2000)), the warranty was not conveyed to plaintiff at the time of sale. We note that other portions of the C.F.R. appear to differentiate between the duties of a warrantor–such as Hyundai–and the duties of a seller–such as Gartner. See, *e.g.*, 16 C.F.R. §702.3 (2000). However, Hyundai has chosen not to rely on this distinction. To the contrary, Hyundai contends that "by providing the limited warranty at the time [plaintiff] bought the Sonata, Hyundai complied with both the FTC Rules and the [Magnuson-Moss] Act." An argument could be made that Hyundai has implicitly *accepted* responsibility for transmitting the warranty to plaintiff. At the very least, however, it is clear that Hyundai has utterly failed to raise any argument based on section 702.3 or any differentiation of responsibility between itself and Gartner. We decline to accept the dissent's invitation to consider section 702.3 *sua sponte* and decide

---

and never suggested that the court's ruling thereon was procedurally unfair, neither at the time of the court's ruling nor in its postjudgment motion. If Hyundai had made this argument in a timely fashion, the trial court could have dealt with it, either reversing its ruling or possibly amending the pleadings to conform to the proofs. Hyundai complains that by failing to argue unconscionability in her pleadings plaintiff waived that theory, but Hyundai, by failing to argue *waiver* before the trial court, has itself waived this waiver argument. See 155 Ill. 2d R. 366(b)(2)(iii); *Bullard v. Barnes*, 102 Ill. 2d 505, 519 (1984); *Fitzpatrick v. ACF Properties Group, Inc.*, 231 Ill. App. 3d 690, 697 (1992).

this issue on the basis of an argument the parties have never made, not in the circuit court, the appellate court, initial briefing before this court, nor even on rehearing. We intimate no suggestion as to what the outcome of this or any future case might be if this or any other argument were properly raised before this court or the circuit court (see *supra* footnote 4, discussing Hyundai's failure to raise waiver before circuit court).

To enforce the clause in these circumstances, we conclude, would indeed be unconscionable. See *Frank's Maintenance*, 86 Ill. App. 3d at 991 n.2 ("a limitation of liability given to the buyer after he makes the contract is ineffective"). Accordingly, we affirm the circuit court's order to that effect, as well as the $3,500 which represents that portion of the jury verdict intended to recompense plaintiff for the consequential damages she incurred.

## II. Warranty Damages

The next issue concerns the jury's $5,000 warranty damage award for the decreased value of the car due to the no-start condition. Hyundai does not object to the jury's conclusion that the vehicle was defective or that the limited remedy failed of its essential purpose. Rather, Hyundai contends merely that there was no evidence to support the jury's damages award, and argues that because the award can only have represented a guess by the jury, the court should have entered judgment notwithstanding the verdict (*n.o.v.*) in Hyundai's favor. Plaintiff responds that she is not required to prove damages with mathematical precision, and argues that there was sufficient evidence on damages for the case to go to the jury.

As the appellate court noted, the standard for entry of judgment *n.o.v.* is a high one:

> "A court may enter a judgment *n.o.v.* only when, viewing the evidence in a light most favorable to the nonmoving party, it so overwhelmingly favors the movant that a contrary verdict could not stand. [Citation.] A defendant's motion for judgment *n.o.v.* presents ' "a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the plaintiff['s] case." ' [Citation.]" 349 Ill. App. 3d at 658.

˘24˘

Because the limited remedy failed of its essential purpose, plaintiff was entitled to pursue the other remedies afforded by the UCC. 810 ILCS 5/2–719(2) (West 2000). Under the UCC, "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 810 ILCS 5/2–714(2) (West 2000). "While it is not necessary that damages for breach of warranty be calculated with mathematical precision [citation], basic contract theory requires that damages be proved with reasonable certainty and precludes damages based on conjecture or speculation [citation]." *Ouwenga v. Nu-Way Ag, Inc.*, 239 Ill. App. 3d 518, 523 (1992). Accord *Mitsch v. General Motors Corp.*, 359 Ill. App. 3d 99, 104 (2005); *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 973 (2002). See also *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 315-16 (1987) ("In order to recover lost profits, it is not necessary that the amount of loss be proven with absolute certainty. *** However, recovery of lost profits cannot be based upon conjecture or sheer speculation. [Citation.] It is necessary that the evidence afford a reasonable basis for the computation of damages").

In this case there was no sufficient basis for the jury's $5,000 award. There was no documentary evidence submitted on the damages question, nor expert testimony. The only possible evidence of how much the vehicle's value decreased is plaintiff's testimony, and plaintiff's only testimony which touches on the subject was that she would not today pay the price she had originally paid for the vehicle, because "given the problems that this vehicle–that I have had with this vehicle or the problems the vehicle has had, that's like a used car. I would not pay that for a new car with used problems as it were." There is simply no way for the jury to get from this testimony to a $5,000 award without engaging in speculation and conjecture. " '[I]n proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages.' " *Snelson v. Kamm*, 204 Ill. 2d 1, 33 (2003), quoting *Gill v. Foster*, 157 Ill. 2d 304, 313 (1993). In this case, plaintiff failed to do so.

Plaintiff notes that the price of the car was also entered into evidence and suggests that jurors have sufficient familiarity with cars and breakdowns that they ought to be permitted to determine for themselves how much a car's value would be diminished by events of

the type which occurred in this case. Plaintiff cites a number of cases which suggest that damages may be proven in any manner which is "reasonable," and also notes that our appellate court has held that "[w]here the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove." *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977).

We agree that damages may be proven in any reasonable manner, as a general proposition of law (see, *e.g.*, *Snelson*, 204 Ill. 2d at 33) but this begs the question whether damages were proven in a reasonable manner in this case. The answer is clearly no. Although jurors are not required to check their common sense at the courtroom door (see *People v. Steidl*, 142 Ill. 2d 204, 238 (1991)), we are not prepared to endorse the proposition that jurors are as a class sufficiently familiar with automobiles as to be able to determine the degree of diminution of a particular vehicle's value based on a particular defect without the need for any evidence at all. This is more than a matter of simple common sense. Plaintiff testified, in essence, that "It wasn't worth what I paid for it." There was no number presented, nothing for the jury to work from.

Plaintiff argues that the Magnuson-Moss Act and the UCC are to be construed liberally, and argues that when a plaintiff proves he has suffered damages, the defendant ought not to escape liability simply because the precise measure of the damages is difficult to ascertain. See *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977). We again agree with these propositions as a general matter. But regardless, even assuming that plaintiff suffered some damage, there must be some basis for a jury's damage award, and we can see no process other than speculation by which the jury could have translated the evidence presented by plaintiff to an award of $5,000. We note that even in *Burrus*, itself a UCC case in which a dissatisfied buyer was attempting to recover for the value of defective goods, the record included "testimony" as to "the actual value of the defective [goods] at time of acceptance." *Burrus*, 46 Ill. App. 3d at 357. In this case, by contrast, there is nothing, truly not a scintilla of evidence to support any particular verdict at which the jury might have arrived–much less the suspiciously round number of $5,000.

However, we feel compelled to note that plaintiff attempted to introduce such evidence. During plaintiff's case in chief, the circuit court precluded plaintiff's counsel's from asking plaintiff how much

she would have paid for the car if she had known of the defects. This was error, and it was only because of this error that plaintiff failed to prove damages. Although the decision whether a witness is competent to testify is a matter within the trial court's discretion, lay witnesses are permitted to give their opinion as to the value of property if they have sufficient personal knowledge of the property and its value. *State Farm General Insurance Co. v. Best in the West Foods, Inc.*, 282 Ill. App. 3d 470, 483 (1996). It is true that there must be an adequate showing of the basis for such testimony before it will be allowed (*Best in the West Foods*, 282 Ill. App. 3d at 483), but in this case, the circuit court preemptively ruled that plaintiff would not be permitted to testify as to value before plaintiff's counsel could attempt to establish the foundation of plaintiff's knowledge as to the value of the vehicle. As previously noted, the court ruled that plaintiff could testify

> "as to what her feelings were, what her frame of mind was and the impact of the slow [*sic*] start situation on her personal feelings. *** But as to 'the value of the vehicle would have been such and such because of the no start conditions,' I don't see how you're going to go that far with it."

This was clearly erroneous.

Accordingly, although plaintiff's case failed for proof of damages, it would be entirely unjust to reverse the verdict outright. As previously noted, "[w]here the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove." *Burrus*, 46 Ill. App. 3d at 357 (1977). Accord *McGrady v. Chrysler Motors Corp.*, 46 Ill. App. 3d 136, 140 (1977). Therefore, pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we reverse and remand for a new trial solely on the question of the warranty damages to which plaintiff is entitled. See *Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 804 (Tex. Civ. App. 2004) (noting that "appellate courts have reversed for a new trial where, among other circumstances, the plaintiff failed to show damages with reasonable certainty, but the interests of justice required the plaintiff be given an opportunity to show the proper measure of his or her damages," and remanding for new trial, where jury awarded plaintiff $5,000 for breach of automobile warranty without sufficient evidence of value as delivered).

At this new trial, plaintiff's counsel must not be precluded from

attempting to lay a foundation for plaintiff's knowledge of the value of the car. However, of course, the evaluation of the sufficiency of whatever foundation may be laid to establish plaintiff's personal knowledge of the value of the car will be within the circuit court's discretion (*Best in the West Foods*, 282 Ill. App. 3d at 483); we are not prejudging this question in favor of either party.

### III. Attorney fees

Hyundai admits that the Magnuson-Moss Act permits the court to award attorney fees to a victorious plaintiff. See 15 U.S.C. §2310(d)(2) (2000). Hyundai's only argument here is that once we have reversed the entire verdict in plaintiff's favor, plaintiff cannot be considered "victorious," and accordingly we must also reverse the fee award. Hyundai does not argue nor even suggest that a partial reversal requires that we remand the cause to the circuit court to recalculate the fees to which plaintiff's counsel would be entitled. However, we have not reversed the entire verdict in plaintiff's favor. Accordingly, this argument fails.

### CONCLUSION

For the reasons given above, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court is also affirmed in part and reversed in part. We remand for a new trial on the issue of warranty damages.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

**Dissent Upon Denial of Rehearing**

JUSTICE McMORROW, dissenting:

I initially joined the majority opinion in this case. I remain in agreement with the majority in its adoption of the independent

approach in analyzing limitations of remedy and disclaimers of consequential damages. However, in light of arguments regarding unconscionability that were raised in Hyundai's petition for rehearing, as well as subsequent changes made by the court to its opinion, I believe that rehearing should be allowed.

As Hyundai notes in its petition for rehearing, "[t]he effect of this Court's decision could be tremendous, and [could] impact all manufacturers of goods sold in Illinois." The majority's unconscionability determination imposes an impossible burden on manufacturers and in the process provides a powerful disincentive for manufacturers to offer written warranties. In addition, the majority's decision on this issue runs counter to federal regulations dealing with the allocation of responsibility between manufacturers and sellers. This novel decision represents a dramatic change in state contract law governing warranty exclusions and undoubtedly will have a far-reaching impact.

In part (I)(B) of its opinion, the majority holds, as a matter of state contract law, that Hyundai's exclusion of consequential damages in its manufacturer's limited warranty is procedurally unconscionable and therefore may not be enforced. Two factual points form the basis of the majority's unconscionability determination: (1) the lack of evidence that the warranty was present or even referred to in Gartner's sales contract, and (2) plaintiff's testimony that she never saw any part of Hyundai's written warranty, including the disclaimer of consequential damages, until she looked in her owner's manual after she had signed the sales contract and driven the car off the lot. The majority notes that procedural unconscionability refers, *inter alia*, to a situation where a term is so difficult to find, read, or understand that a plaintiff cannot fairly be said to have been aware that she was agreeing to it. With this definition in mind, the majority states: "[W]hatever other context there might be in which a contractual provision would be found to be procedurally unconscionable, that label must apply to a situation such as the case at bar where plaintiff has testified that she never saw the clause nor is there any basis for concluding that plaintiff *could* have seen the clause before entering into the sale contract." (Emphasis in original.) Slip op. at 20. In other words, the consequential damages clause was difficult to find or read (and therefore procedurally unconscionable), not because it was in small print or because it was relegated to the back of the contract, but rather because, based on the record

evidence, it was not "made available to the plaintiff at or before the time she signed the sale contract." Slip op. at 20.

In support of its ruling that Hyundai's consequential damages clause is unconscionable, the majority points to 16 C.F.R. §700.11(b), a Federal Trade Commission (FTC) regulation dealing with written warranties. Section 700.11(b) states, in pertinent part:

> "A written warranty must be 'part of the basis of the bargain.' This means that it must be conveyed at the time of sale of the consumer product ***." 16 C.F.R. §700.11(b) (2000).

This requirement that the warranty "must be conveyed at the time of sale" raises two questions. First, what is meant by "conveyed at the time of sale"? The majority takes the position that, in order for the warranty to be conveyed at the time of sale, it must be made available to the purchaser at or before the time the purchaser signs the sales contract. In the case at bar, as noted, the warranty was included in the owner's manual, which was in the glove compartment of the car, and plaintiff apparently did not see the warranty until after she signed the purchase contract and drove the car off the lot. In the majority's view, the inclusion of the warranty in the glove compartment of the car did not constitute the conveying of the warranty at the time of sale. However, Hyundai appears to argue in its petition for rehearing that such inclusion of the warranty in the glove compartment did constitute providing the warranty "at the time of sale." The majority disagrees, but cites to no authority for its contrary interpretation of this phrase.

A more important question with regard to this requirement is whether it is the warrantor or the retail seller who bears the burden of conveying the warranty at the time of sale. Section 700.11(b) does not say. However, this question is answered by section 702.3 (16 C.F.R. §702.3 (2000)). Section 702.3(a), which describes the duties of a seller, provides, in pertinent part:

> "[T]he seller of a consumer product with a written warranty shall make a text of the warranty readily available for examination by the prospective buyer by:
>
> > (1) Displaying it in close proximity to the warranted product, or
> >
> > (2) Furnishing it upon request prior to sale and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the

store or department advising such prospective buyers of the availability of warranties upon request." 16 C.F.R. §702.3(a) (2000).

Section 702.3(b), which describes the duties of a warrantor, provides, in pertinent part, that a warrantor shall:

"Provide sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more by the following means:

(A) Providing a copy of the written warranty with every warranted consumer product[.]" 16 C.F.R. §702.3(b)(1)(i) (2000).

Under section 702.3, it is the *retail seller's* obligation to make the written warranty available to the prospective buyer at the point of sale. The manufacturer, on the other hand, is required only to provide the retail seller with the warranty materials that the seller will need to meet this obligation. 16 C.F.R. §§702.3(a), (b)(1)(i) (2000). Thus, in the case at bar, it was Gartner's obligation to make the written warranty available to plaintiff. Hyundai's obligation, on the other hand, was merely to provide Gartner with the necessary warranty materials. It is undisputed that Hyundai satisfied this requirement.

The majority acknowledges section 702.3 and its allocation of responsibility between the warrantor and the seller. However, the majority asserts that Hyundai has waived any argument based on section 702.3. The majority states:

"[I]t is clear that Hyundai has utterly failed to raise any argument based on section 702.3 or any differentiation of responsibility between itself and Gartner. We decline to accept the dissent's invitation to consider section 702.3 *sua sponte* and decide this issue on the basis of an argument the parties have never made, not in the circuit court, the appellate court, initial briefing before this court, nor even on rehearing." Slip op. at 23.

The majority emphasizes that an argument based on section 702.3 was not raised by the parties in the circuit court, the appellate court, or in initial briefing before this court. The reason Hyundai did not raise this argument in the lower courts or on initial briefing before this court is that it was unnecessary. No argument that Hyundai's consequential damages exclusion was procedurally unconscionable

˘31˘

was raised in the courts below or in plaintiff's brief to this court.[5] With regard to Hyundai's petition for rehearing, the majority is incorrect in asserting that Hyundai "utterly failed" to raise an argument based on differentiation of responsibility. Hyundai pointed in its petition to "the very different roles" of the warrantor and the seller regarding the sales transaction in the case at bar. It is true that, in making this argument, Hyundai failed to cite specifically to section 702.3 of the FTC regulations. However, the majority's invocation of waiver in this instance, solely because Hyundai failed to cite to the appropriate section of the regulations, constitutes, in my view, an overly technical application of the waiver doctrine. See *In re D.F.*, 208 Ill. 2d 223, 238-39 (2003) (the rule of waiver is a limitation on the parties and not on the court).

The majority's application of the waiver doctrine is objectionable for a more fundamental reason as well. In explaining its waiver decision, the majority asserts that it will not address *sua sponte* an argument on behalf of Hyundai that was not raised below. However, the majority fails to note that its own procedural unconscionability rationale for declining to enforce Hyundai's exclusion was itself raised *sua sponte*. As previously indicated, no argument was raised in the courts below or in plaintiff's brief to this court that Hyundai's consequential damages exclusion was procedurally unconscionable because Hyundai failed to make its warranty available to plaintiff at

---

[5]In her brief to this court, plaintiff did contend that the disclaimer at issue was unconscionable. However, in making this argument, which consisted of a single paragraph that contained a block quote, plaintiff contended that Hyundai's warranty exclusion was *substantively* unconscionable in that it was "an invalid contract of adhesion." Plaintiff did not argue that the warranty exclusion was *procedurally* unconscionable.

the time she signed the purchase contract. This argument is raised for the first time by this court in its opinion in the case at bar. The unavoidable implication of the majority's refusal to consider the section 702.3 contention is that it is perfectly acceptable for this court to raise, *sua sponte*, an argument on behalf of one party, while nevertheless declining to consider, *sua sponte*, an argument on behalf of the opposing party. While I do not believe that the majority intends this implication, it necessarily follows, and it undoubtedly will be a message taken from the majority's decision in this case.

The majority attempts to limit the impact of its procedural unconscionability holding by asserting that the outcome might be different if section 702.3 were properly raised. The majority states: "We intimate no suggestion as to what the outcome of this or any future case might be if this or any other argument were properly raised before this court or the circuit court." Slip op. at 23. I disagree with this assertion. The majority today concludes, as a matter of state contract law, that an exclusion in a limited warranty is unenforceable where a manufacturer fails to make the warranty available to the consumer at or before the time the purchase contract is signed. While the relevant FTC regulations contradict this holding, these regulations are not necessarily controlling. The majority cites to section 700.11(b) merely as support for its holding that Hyundai's warranty exclusion is unconscionable. The majority's decision regarding the unconscionability of warranty exclusions will stand regardless of whether section 702.3 is properly raised in a future case.

I note, in addition, that there are difficulties with the majority's unconscionability holding even when considered solely as a matter of state contract law, without reference to the federal regulations. In finding Hyundai's consequential damages disclaimer unconscionable, the majority concludes that this exclusion is void and unenforceable as a matter of public policy. The clear implication of such a holding is that Hyundai did something wrong, such as hiding the exclusion "in a maze of fine print." *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 990 (1980). However, in the case at bar Hyundai committed no such infraction. Instead, Hyundai's transgression was that it failed to make the warranty "available to the plaintiff at or before the time she signed the sale contract." Slip op. at 20. This raises the question of how Hyundai could have avoided this transgression and ensured that the warranty was conveyed to plaintiff. The majority insists that the inclusion of the warranty in the purchase

˘33˘

contract is not the only way in which "plaintiff could *** have received the warranty." There are other possibilities, the majority asserts, but these possibilities are not identified. Slip op. at 21.

If the warranty must be made available to the consumer at or before the time the purchase contract is signed, and if, as the majority concludes, the warrantor may not rely on the seller to meet this responsibility, then there is, in my view, only one possible way in which the warrantor could satisfy this obligation. The warrantor must have a representative physically present on the seller's premises to make sure that the warranty is conveyed to the consumer, thereby ensuring the warranty's enforceability. A moment's reflection reveals the unreasonableness of such a requirement. Under the majority's holding, which is not limited to automobile manufacturers, any manufacturer who warrants a product sold at a retail outlet would need to hire representatives for each of the many such outlets that sold the manufacturer's products. This is an impossible burden to place on the manufacturer. It is unreasonable for the majority to hold Hyundai responsible for failing to do something that cannot realistically be achieved.

There is another way in which the majority's decision here is objectionable. The majority reasons that, because Hyundai's consequential damages disclaimer was not provided to plaintiff at or before the time she signed the purchase contract, this exclusion was not part of the agreement and is void and unenforceable. However, according to the record evidence cited by the majority, it was the entire warranty, and not just the consequential damages exclusion, that was unavailable to plaintiff at the time she signed the contract. As the majority asserts:

> "[P]laintiff testified without contradiction that she never saw any part of the written warranty, much less the disclaimer of consequential damages, until she looked in her owner's manual after she had signed the contract and driven the car off the lot. Thus, *on this record*, we must conclude that the warranty information, including the disclaimer of consequential damages, was not made available to the plaintiff at or before the time she signed the purchase contract." (Emphasis in original.) Slip op. at 20.

Under the majority's reasoning, if the consequential damages exclusion is void because it was not made available to plaintiff and

was not part of the agreement entered into by plaintiff, the same is also true of the warranty as a whole. It follows that, if the warranty itself is void, *i.e.*, not part of the agreement, plaintiff should not be able to bring suit against Hyundai under the warranty. Nevertheless, in the case at bar, the majority holds, *sua sponte*, that Hyundai's exclusion is void because it was not conveyed to plaintiff. The majority does not, however, reach the same conclusion regarding the warranty as a whole. This is inconsistent.

The majority's holding regarding Hyundai's consequential damages disclaimer is objectionable for yet another reason. In my view, the majority's decision on this issue is detrimental to consumers. By holding that Hyundai's consequential damages exclusion is unenforceable because Hyundai failed to do something that it could not realistically accomplish, the majority is discouraging manufacturers from offering written warranties at all. While a manufacturer's decision to provide such warranties undoubtedly is influenced by competitive pressures, the benefits of offering a warranty will be considerably diminished if the manufacturer has no control over the scope of the warranty offered. Under the majority's holding, the ability of a manufacturer to control this scope through exclusions such as a disclaimer of consequential damages is severely constrained, if not eliminated. Faced with such a prospect, a manufacturer might very well conclude that it is no longer cost effective to offer a written warranty. Such a result would indeed be anticonsumer

In its petition for rehearing, Hyundai argues that the majority erred in basing its unconscionability determination on the lack of evidence that the warranty was included in the purchase contract. Hyundai contends that, as a warrantor, it has no control over the terms of the sales contract, which is between Gartner (not Hyundai) and plaintiff, and is a document entirely separate from the warranty between Hyundai and plaintiff. In responding to this argument, the majority asserts that it is not "unfair to bind a manufacturer by the actions of a seller" (slip op. at 21). In support of this proposition, the majority points to *Wilbur v. Toyota Motor Sales, U.S.A.*, 86 F.3d 23 (2d Cir. 1996). *Wilbur* is clearly distinguishable from the case at bar.

The plaintiff in *Wilbur* sued Toyota Motor Sales (Toyota) for refusing to honor its new car warranty on her Toyota Camry. The plaintiff bought the car in May 1992 from Tri-Nordic Toyota (Tri-

Nordic), which had used it as a demonstrator for several months prior to the sale. Before the plaintiff bought the car, Tri-Nordic told her that, during the time the car was being used as a demonstrator, it had been in an accident that required nearly $4,000 in repairs. However, Tri-Nordic told the plaintiff that the car had been fully repaired and had sustained no structural damage. At the time of the plaintiff's purchase of the car, the plaintiff received a copy of Toyota's warranty, which stated that the warranty went into effect " 'on the date the vehicle is first delivered or put into use (in-service date).' " *Wilbur*, 86 F.3d at 24-25. Tri-Nordic filled in the in-service date as "5/18/92," the date the plaintiff bought the car. The warranty also stated that " 'repairs and adjustments required as a result of ... accident ... are not covered.' " *Wilbur*, 86 F.3d at 25. In June 1992 the plaintiff began experiencing problems with the car, but when she took it in for repairs, she was told that the repairs were excluded from coverage because the vehicle had sustained structural damage in an accident. Following the filing of the plaintiff's suit for breach of warranty, Toyota moved for summary judgment, and the motion was granted. A main issue on appeal was whether Toyota's warranty, with its accident exclusion, went into effect on the date that the plaintiff bought the car or on the date several months previously when it was delivered to Tri-Nordic. If it went into effect when the car was delivered to Tri-Nordic, this would mean that the warranty's exclusion for accidental damage applied from that date, and there was thus no warranty coverage for any repairs resulting from the accident. If, however, the warranty did not go into effect until the plaintiff bought the car, the accidental damages exclusion would not have taken effect until after the accident took place, and the repairs resulting from the accident *would* be covered. The Court of Appeals held that the warranty went into effect on the date the plaintiff bought the car. The court therefore reversed the grant of summary judgment in favor of Toyota. In reaching this conclusion, the court conceded that "it was the actions of Tri-Nordic, not Toyota, which resulted in the damage to the car that in turn led to this lawsuit." *Wilbur*, 86 F.3d at 27. However, the court added that Toyota "gave its dealer the authority to fill in the in-service date." *Wilbur*, 86 F.3d at 27. In other words, Toyota would not have been vulnerable to the suit arising from the accident if Tri-Nordic had not filled in the "5/18/92" in-service date on the warranty, which was an action that Toyota had authorized Tri-Nordic to take. The court concluded that the plaintiff's

breach-of-warranty claim "cannot be defeated on Toyota's motion for summary judgment and must be allowed to proceed to trial." *Wilbur*, 86 F.3d at 27.

While it was Tri-Nordic's actions that led to the accident in *Wilbur*, this accident was problematic for Toyota only because of the in-service date that Tri-Nordic filled in on the warranty. As noted, Toyota had authorized Tri-Nordic to fill in this date. In the case at bar, on the contrary, any error on the part of Gartner in failing to include the warranty in the sales contract was not authorized by Hyundai.

With regard to whether a manufacturer may be bound by the actions of a seller, the most that can be concluded from *Wilbur* is that, where the warrantor *authorized* the actions of the seller, the warrantor's disclaimer may be held unenforceable. However, *Wilbur* has no application to the case at bar, where any error on the part of the seller in failing to include the warranty in the purchase contract clearly was *not* authorized by Hyundai. The majority's reliance on *Wilbur* is misplaced.

In sum, I disagree with the majority's unconscionability determination for several reasons. Under the majority's novel holding, which represents a dramatic change in state contract law, manufacturers now face an impossible hurdle in attempting to ensure that their warranty exclusions are enforceable. A possible result is that manufacturers will conclude it is no longer cost-effective to offer written warranties. This result, as noted, would be decidedly anticonsumer. Moreover, in holding Hyundai responsible for failing to make its warranty available to plaintiff at the time she signed the purchase contract, the majority directly contradicts the relevant FTC regulations, particularly section 702.3, which provides that it is the *seller's* responsibility to make the warranty available to the purchaser at the point of sale. In addition, by raising an argument, *sua sponte*, on behalf of plaintiff but declining, at the same time, to consider, *sua sponte*, an argument on behalf of Hyundai, the majority sends an unfortunate message regarding the fairness of this court's approach to arguments raised on behalf of parties who appear before us.

Because of my disagreement with the majority on these points, I respectfully dissent from the modification of the opinion upon denial of rehearing. It is my belief that this court could benefit from briefing on these matters. I note, too, that this court allows successive petitions

for rehearing where a majority opinion has been modified upon denial of rehearing. In light of the extensive modifications made by the majority here, I suggest the filing of such a petition. For the foregoing reasons, I vote to grant Hyundai's petition for rehearing.