Nicolyn S. WILBUR, Plaintiff–Appellant,

v.

TOYOTA MOTOR SALES, U.S.A., INC., Defendant–Appellee,

Tri–Nordic, Inc., Defendant.

No. 1428, Docket 95–7829.

United States Court of Appeals, Second Circuit.

Argued March 27, 1996.

Decided June 11, 1996.

William J. Donahue, White River Junction, VT, for Plaintiff–Appellant.

Michael B. Rosenberg, Burlington, VT (Peter F. Young, Miller, Eggleston & Rosenberg, Ltd., of counsel), for Defendant–Appellee.

Before NEWMAN, Chief Judge, OAKES and PARKER, Circuit Judges.

OAKES, Senior Circuit Judge:

Appellant Nicolyn S. Wilbur ("Wilbur") appeals from an order entered on March 27, 1995, by the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Senior Judge*, granting summary judgment to Appellee Toyota Motor Sales, U.S.A., Inc. ("Toyota"). Wilbur sued Toyota for violating the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312 (1994) ("MMWA"), and the Vermont Consumer Fraud Act, Vt.Stat.Ann. tit. 9, §§ 2451–2480(g) (1993) ("VCFA"), by refusing to honor its new car warranty on her Toyota Camry. On appeal, Wilbur argues that the district court erred in finding as a matter of law that the warranty excluded damage done to the car before it was purchased. We agree with Wilbur that the damage occurring prior to the date the dealer listed the car as "in service" was not excluded from warranty coverage. Accordingly, we reverse the summary judgment in favor of Toyota and remand to the district court.

## BACKGROUND

■ As this appeal requires us to review a grant of summary judgment, we must examine the facts in the light most favorable to Wilbur, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

On May 18, 1992, Wilbur bought a 1992 Toyota Camry for $18,600 from Tri–Nordic Toyota ("Tri–Nordic") in White River Junction, Vermont. The car had been used as a demonstrator by the dealership and had roughly 5,800 miles on the odometer. Wilbur's Bill of Sale identified the car as a "New Camry Demo."

Before Wilbur bought the car, Tri–Nordic informed her that the car had been in an accident requiring almost $4,000 in repairs. The accident, a rear-end collision, occurred in October 1991 when one of Tri–Nordic's employees was using the car to look at New Hampshire's fall foliage with his relatives. Tri–Nordic told Wilbur that the car had been fully repaired and had sustained no structural damage.[1]

At the time of purchase, Wilbur received a copy of Toyota's "New Vehicle Limited Warranty" which stated that the warranty went into effect "on the date the vehicle is first

---

1. Wilbur's fiancé, who was helping her look for a new car, asked to see the repair bills but Tri– Nordic told him that the bills were lost.

delivered or put into use (in-service date)." Tri–Nordic filled in the in-service date as 5/18/92, the date Wilbur bought the car. The warranty further stated that "repairs and adjustments required as a result of ... accident ... are not covered."

In June 1992, Wilbur drove the Camry to California for the summer. On the way, she discovered that the car's ABS braking system did not work, that the trunk had a major leak, and that the rear of the car made a creaking noise. When she brought the car to a Toyota dealer in California for repairs, the dealer told her that the repairs were excluded from warranty coverage because the vehicle had sustained structural damage in an accident. After making visits to several other dealerships, all of which refused to honor her Toyota warranty, Wilbur obtained an estimate of approximately $9,500 for the repairs. She also had the car appraised and learned that a potential buyer who knew of its condition would not have paid more than $10,000 for it.

Wilbur reported the repair estimate to Tri–Nordic, which offered to make the repairs if Wilbur agreed to split the cost of transporting the car back to Vermont. After refusing to do so, Wilbur made numerous complaints about the denial of warranty coverage to Toyota, Tri–Nordic, and the Attorney General of Vermont.

Wilbur brought suit in Vermont state court against Tri–Nordic and Toyota in February 1994, alleging that Toyota had violated the MMWA, that Tri–Nordic had violated the Vermont Motor Vehicle Manufactures, Distributors and Dealers Franchising Practices Act, Vt.Stat.Ann. tit. 9, §§ 4083–4100 (1993), and that both parties had violated the VCFA. After removing the case to federal court, Toyota moved for summary judgment on both claims against it in February 1995. The district court granted the motion, holding that because the damage from the accident was excluded from coverage under the warranty as a matter of law, Toyota did not violate the MMWA or the VCFA when it

refused to repair Wilbur's car.[2] This appeal followed.

## DISCUSSION

Wilbur raises two issues before us: (1) whether Toyota violated the MMWA by refusing to honor Wilbur's new car warranty and (2) whether Toyota's violation of the MMWA constitutes a deceptive practice under the Vermont Consumer Fraud Act. Wilbur argues that her warranty commenced in May 1992 and did not exclude the damage done to the car in an accident seven months before. She therefore claims it was error for the district court to grant summary judgment to Toyota.

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2549–52, 91 L.Ed.2d 265 (1986). We review the grant of summary judgment *de novo* and because "no genuine issues of material fact are in dispute, we need only decide whether the law was correctly applied by the trial court." *Greene v. United States,* 79 F.3d 1348, 1351 (2d Cir.1996).

Before discussing the merits, it will be helpful to explain how the parties refer to certain aspects of Toyota's warranty. When referencing the date on which the warranty commenced, the parties mean the date that starts the period in which exclusions spelled out in the warranty apply. Though they sometimes speak as if the warranty is not even applicable to the period before it commenced, they do not mean this literally: if a defect resulted from damage that occurred while the vehicle was being manufactured, for example, the warranty would apply to such a defect. Thus, when Toyota contends that the accident occurred during the warranty period and Wilbur says it did not, Toyota means that the accident exclusion in the warranty applied and relieved Toyota of

---

**2.** Wilbur and Tri–Nordic settled before trial and the claims against Tri–Nordic were dismissed with prejudice on July 28, 1995.

liability, while Wilbur means that the accident exclusion did not apply and that therefore the warranty entitled her to compensation.

In this case, both sides agree that the warranty would cover a defect resulting from an accident that occurred before delivery to Tri–Nordic and would not cover a defect resulting from an accident that occurred after Wilbur bought the car. They dispute whether the warranty covers an accident that occurred during the period the car was used by Tri–Nordic as a demo.

The district court found that the warranty, with its accident exclusion, went into effect at the start of the demo period, that Wilbur "assumed the remainder of the limited factory warranty" when she bought the Camry and that the accident in October "occurred during the course of the warranty," *i.e.* at a time when the warranty's accident exclusion was applicable. Because the warranty specifically excluded repairs resulting from accidents, the district court concluded that the damage to Wilbur's car was not covered. The MMWA mandated this conclusion, the district court reasoned, because the accident exclusion was clearly and conspicuously disclosed in accordance with the law.

■ The central issue in this case is whether the warranty, with its accident exclusion, applied to the period before the in-service date when the car was being used as a demo. The district court found, and Toyota argues on appeal, that the warranty had already begun to run when the accident happened, over seven months before Wilbur purchased the car. A review of the warranty in light of the requirements of the MMWA, however, leads us to a different result.

The Toyota New Vehicle Limited Warranty issued to Wilbur at the time of purchase stated that "[t]he warranty period begins on the date the vehicle is first delivered or put into use (in-service date)." The in-service date was filled in by Tri–Nordic as May 18, 1992—the day Wilbur bought the car. It seems evident, then, that the warranty had not commenced when the accident occurred and that therefore the repairs were not excluded from warranty coverage.

Despite these facts, Toyota claims that a later section of the warranty book entitled "California Emission Control Warranty" makes clear that the warranty period begins

> on the date the vehicle is first delivered to the ultimate purchaser; or, if the vehicle is first placed into service as "demonstrator" or "company car" prior to delivery, on the date it is first placed into service.

Toyota urges us to treat this isolated language, appearing ten pages later in the warranty book as part of a wholly separate warranty, as a clear indication to Wilbur that the New Vehicle Limited Warranty had commenced at the time of the accident. We are unwilling to do so.

The MMWA grants relief to a consumer "who is damaged by the failure of a ... warrantor ... to comply with any obligation ... under a written warranty." 15 U.S.C. § 2310(d)(1) (1994). When drafting a written warranty, Toyota must "fully and conspicuously disclose in simple and readily understood language [its] terms and conditions." 15 U.S.C. § 2302(a) (1994); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir.1990), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). The accompanying regulations define one such term as "[t]he point in time or event on which the warranty term commences, if different from the purchase date." 16 C.F.R. § 701.3(a)(4) (1995).

Facially, Toyota's New Vehicle Limited Warranty appears to fulfill the MMWA's clarity requirements: the warranty commences on the in-service date, which is filled in by the dealer when the car is sold. Failure to repair damage sustained before the in-service date therefore puts Toyota in violation of MMWA for breach of warranty. Moreover, Toyota's suggested addition of the California Emission Control Warranty's language renders the time of the warranty's commencement ambiguous at best: Is the "in-service date" the date the car is put into use by the buyer or by the dealer? Under Toyota's own construction, then, the warranty would violate the MMWA because it would not "fully and conspicuously disclose" its commencement date.

Toyota is thus placed in a somewhat uncomfortable position. If it subscribes to a straight reading of its New Vehicle Limited Warranty, it must concede that Wilbur's warranty had not commenced when the accident occurred and that its refusal to repair her car is a breach of warranty. If Toyota stands by the warranty construction it has pressed upon us here, its warranty must be deemed cryptic and unclear. In either case, Wilbur may recover damages under the MMWA. 15 U.S.C. § 2310(d)(1) (1994). *See Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 924 (1990) (listing remedies available to consumer under the MMWA when manufacturer warrants defective goods).

■ Concededly, it was the actions of Tri–Nordic, not Toyota, which resulted in the damage to the car that in turn led to this lawsuit. But Toyota provided Wilbur with a new car warranty and gave its dealer the authority to fill in the in-service date. The MMWA, by requiring any warrantor to draft clear warranty terms and conditions, simply incorporates the well-established contract principle of *contra proferentum* by which a drafting party must be prepared to have ambiguities construed against it. *Westchester Resco Co. v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d Cir.1987); *Restatement (Second) of Contracts* § 206 (1981). We therefore find that Wilbur's claim under the MMWA cannot be defeated on Toyota's motion for summary judgment and must be allowed to proceed to trial.

Because the district court based its decision in this case on the warranty's accident exclusion and did not address the warranty's commencement date, the court erred in granting summary judgment to Toyota on the MMWA claim. Thus, the district court's grant of summary judgment on Wilbur's state claim, based on its finding that the absence of liability under the MMWA removed any basis for recovery under the VCFA, was also in error. We reverse and remand both claims for reconsideration by the district court.

## CONCLUSION

We reverse the grant of summary judgment in favor of Toyota and remand for further proceedings consistent with our reasoning above.