Edward J. **MINSKOFF**; **Edward J. Minskoff Equities, Inc.,** Plaintiffs–Appellants,

v.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,** Defendant–Appellee.

**No. 1536, Docket 95–9038.**

United States Court of Appeals, Second Circuit.

Argued April 22, 1996.

Decided Oct. 23, 1996.

G. Michael Bellinger, New York City (Steven M. Levy, Proskauer Rose Goetz & Mendelsohn LLP, New York City, of counsel), for Plaintiffs–Appellants.

John W. Blancett, New York City (M. Faith Martin, Sedgwick, Detert, Moran & Arnold, New York City, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Edward J. Minskoff and Edward J. Minskoff Equities, Inc. ("Equities") appeal from a final judgment entered September 15, 1995 in the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge,* that granted the motion of defendant-appellee American Express Travel Related Services Company, Inc. ("American Express") for summary judgment dismissing plaintiffs-appellants' complaint. The complaint asserted claims under 15 U.S.C. § 1643,[1] a provi-

---

**1.** Section 1643 provides in pertinent part:

(a)(1) A cardholder shall be liable for the unauthorized use of a credit card only if—

(A) the card is an accepted credit card;

(B) the liability is not in excess of $50;

(C) the card issuer gives adequate notice to the cardholder of the potential liability;

(D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card, which description may be provided on the face or reverse side of the statement required by section 1637(b) of this title or on a separate notice accompanying such statement;

(E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred

706

sion of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (the "TILA"), and New York General Business Law § 512 [2] for recovery of $276,334.06 paid to American Express through checks forged by an Equities employee to cover charges incurred by that employee on American Express credit cards that were fraudulently obtained and used by the employee. *See Minskoff v. American Express Travel Related Servs. Co.*, No. 94 Civ. 967 (RPP), 1995 WL 527694, at *3–*7 (S.D.N.Y. Sept. 6, 1995). The complaint also sought a declaratory judgment that plaintiffs-appellants were not liable for the balance of the unpaid charges outstanding on those credit cards, but the district court granted American Express summary judgment in the amount of $51,657.71 on its counterclaim for that balance. *See id.* at *8.

We vacate the judgment of the district court and remand for further proceedings.

## Background

Minskoff is the president and chief executive officer of Equities, a real estate holding and management firm. In 1988, Equities opened an American Express corporate card account (the "Corporate Account") for which one charge card was issued in Minskoff's name. Minskoff also maintained a personal American Express account, which was established in 1963.

In October 1991, Equities hired Susan Schrader Blumenfeld to serve as its assistant to the president/office manager. Blumenfeld was responsible for both the personal and business affairs of Minskoff, and her duties included screening Minskoff's mail, reviewing vendor invoices and credit card statements (including statements for the Corporate Account), and forwarding such invoices and statements to Equities' bookkeepers for pay-

ment. Prior to Blumenfeld's employment with Equities, Minskoff personally reviewed all Corporate Account statements; after hiring Blumenfeld; he no longer reviewed any of these statements.

In March 1992, defendant-appellee American Express received an application for an additional credit card to issue from the Corporate Account in Blumenfeld's name. The application had been pre-addressed by American Express and mailed to Minskoff at his business address. It had been completed and submitted by Blumenfeld without the knowledge or acquiescence of Equities or Minskoff. American Express issued the supplemental card and mailed it to Equities' business address. From April 1992 to March 1993, Blumenfeld charged a total of $28,213.88 on that card.

During this period, American Express sent twelve monthly billing statements for the Corporate Account to Equities' business address. Each statement listed both Blumenfeld and Minskoff as cardholders on the Corporate Account, and separately itemized Corporate Account charges for Minskoff and Blumenfeld. These twelve statements show a total of $28,213.88 in charges attributed to Blumenfeld and $23,099.37 in charges attributed to Minskoff, for a total of $51,313.25. Between April 1992 and March 1993, American Express received twelve checks, drawn on accounts maintained by Minskoff or Equities at Manufacturers Hanover Trust ("MHT"), in payment of these charges, with each check made payable to American Express and bearing Equities' Corporate Account number. Minskoff did not review any statements or cancelled checks received during 1992 and 1993 from either his personal account with MHT or the Equities account with MHT.

or may occur as the result of loss, theft, or otherwise; and

(F) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.

. . . .

(d) Except as provided in this section, a cardholder incurs no liability from the unauthorized use of a credit card.

**2.** Section 512 provides:

A provision which imposes liability upon a holder for a cash advance or loan or for the purchase or lease of property or services obtained by the unauthorized use of a credit card or a debit card shall not be enforceable to the extent that it imposes a greater liability upon the holder than is imposed upon the holder of a credit card under the provisions of the act of congress entitled "Truth in Lending Act" [15 U.S.C. § 1601 *et seq.*] and the regulations thereunder, as such act and regulations may from time to time be amended.

In July 1992, American Express sent Minskoff an unsolicited invitation to apply for a platinum card. Blumenfeld accepted the invitation on behalf of Minskoff, again without the knowledge or acquiescence of either Minskoff or Equities.[3] Blumenfeld also submitted a request for a supplemental card to issue from this new account (the "Platinum Account") in her name. When platinum cards arrived in both Minskoff's and Blumenfeld's names, Blumenfeld gave Minskoff his card, claiming that it was an unsolicited upgrade of his American Express card privileges. Minskoff proceeded to use his platinum card for occasional purchases, and Blumenfeld charged approximately $300,000 to the Platinum Account between July 1992 and November 1993.

Between August 1992 and November 1993, American Express mailed sixteen Platinum Account monthly billing statements to Equities' business address. Each statement named Blumenfeld and Minskoff as cardholders and itemized charges for each separately. These statements attributed a total of $250,394.44 in charges to Blumenfeld and $10,497.31 to Minskoff, for a total of $260,891.75. These bills were paid in full with checks drawn on the MHT accounts, made payable to American Express, and bearing the Platinum Account number.

In November 1993, Equities' controller, Steven Marks, informed Minskoff that MHT had called to inquire about a check made payable to American Express for approximately $41,000 that had been written on Equities' MHT account. Minskoff stopped payment on the check, initiated an internal investigation of Equities' accounts that revealed the full extent of Blumenfeld's fraudulent activities, and gave notice to American Express of Blumenfeld's unauthorized charges to the Platinum and Corporate Accounts. Blumenfeld subsequently stated in an affidavit that she had forged approximately sixty checks drawn on Equities' MHT account and Minskoff's personal MHT account, including at least twenty payments to American Express for charges to the Plati-

num and Corporate Accounts. Although some of these checks were used to pay legitimate obligations of plaintiffs-appellants, an accounting analysis attributed losses totalling $412,684.06 to Blumenfeld's theft. In January 1994, Blumenfeld agreed to repay $250,000 to Minskoff and Equities in return for their promise not to institute legal action against her.

Plaintiffs-appellants initiated this action in the United States District Court for the Southern District of New York on February 15, 1994. As previously noted, they sought (1) to recover $276,334.06 that had been paid to American Express in satisfaction of unauthorized charges by Blumenfeld, and (2) a declaration that they were not liable for the outstanding balances on the Platinum Account. The district court, however, dismissed their complaint and awarded American Express $51,657.71 on its counterclaim for that balance. *See Minskoff*, 1995 WL 527694 at \*3–\*8. The district court reasoned that the $50 limit on a cardholder's liability for the unauthorized use of the cardholder's credit card specified in 15 U.S.C. § 1643(a)(1)(B), *see supra* note 1, did not apply to plaintiffs-appellants because their negligence in failing to examine credit card statements that would have revealed Blumenfeld's fraudulent charges "resulted in an appearance of authority [to use the cards] in Blumenfeld." *Id.* at \*6.

This appeal followed.

## Discussion

We review *de novo* the district court's grant of summary judgment. *Wilbur v. Toyota Motor Sales, U.S.A.*, 86 F.3d 23, 25 (2d Cir.1996). In determining whether a grant of summary judgment is appropriate, the district court must "draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996). A grant of summary judgment should be

---

**3.** It is not clear from the record whether the invitation to receive a platinum American Express card was directed to Minskoff in his individual capacity or in his official position as president of Equities. The solicitation was preprinted with Minskoff's home address, and the record does not reveal how it ended up in Blumenfeld's hands at the Equities office.

affirmed only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Plaintiffs-appellants contend that because Blumenfeld obtained the platinum and corporate credit cards through forgery and fraud, her use of the cards is *per se* unauthorized under section 1643, *see supra* note 1, and plaintiffs-appellants' liability is therefore limited to $50 by section 1643(a)(1)(B). Section 1643 applies, however, only in the case of an "unauthorized use" of a credit card. *See* § 1643(a)(1), (d). The term "unauthorized use" is defined as "a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(*o*). In determining whether a use is unauthorized, "Congress apparently contemplated, and courts have accepted, primary reliance on background principles of agency law in determining the liability of cardholders for charges incurred by third-party card bearers." *Towers World Airways v. PHH Aviation Systems,* 933 F.2d 174, 176–77 (2d Cir.), *cert. denied,* 502 U.S. 823, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991).

■ Under general principles of agency, the authority of an agent "is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him." *Restatement (Second) of Agency* (the "*Restatement*") § 7 cmt. a (1958). Such authority may be express or implied, but in either case it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act. *See id.* cmt. b.

■ Apparent authority is "entirely distinct from authority, either express or implied," *id.* § 8 cmt. a, and arises from the "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him," *id.* § 27; *see also Fennell v. TLB*

*Kent Co.,* 865 F.2d 498, 502 (2d Cir.1989). Apparent authority, then, is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent. *See Fennell,* 865 F.2d at 502 (collecting cases).

■ The existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment. *See, e.g., Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 994 (2d Cir.1991) (citing *Stanford v. Kuwait Airways Corp.,* 648 F.Supp. 1158, 1162 (S.D.N.Y.1986)). However, a principal may be estopped from denying apparent authority if (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third party. *See* Restatement § 8B; *Masuda v. Kawasaki Dockyard Co.,* 328 F.2d 662, 665 (2d Cir.1964).

■ Viewing the facts in the light most favorable to plaintiffs-appellants, it is clear that Blumenfeld acted without actual or implied authority when she forged the platinum card acceptance form and supplemental card applications. Accordingly, plaintiff-appellants cannot be held accountable for Blumenfeld's initial possession of corporate and platinum cards. As we stated in *Towers:*

> Though a cardholder's [voluntary] relinquishment of possession may create in another the appearance of authority to use the card, [15 U.S.C. §§ 1602(*o*) and 1643] clearly preclude[ ] a finding of apparent authority where the transfer of the card was without the cardholder's consent, as in cases involving theft, loss, or fraud. However elastic the principle of apparent authority may be in theory, the language of the 1970 Amendments [to the TILA] demonstrates Congress's intent that the category of cases involving charges incurred as a result of *involuntary* card transfers are to be regarded as unauthorized under sections 1602(*o*) and 1643.

*Towers,* 933 F.2d at 177.

■ This result is consistent with the underlying policy of the TILA to protect credit

card holders against losses due to theft or fraudulent use of credit cards on the theory that the card issuer is in the better position to prevent such losses. *See Walker Bank & Trust Co. v. Jones,* 672 P.2d 73, 77 (Utah 1983) (Durham, J., dissenting) (citing John C. Weistart, *Consumer Protection in the Credit Card Industry: Federal Legislative Controls,* 70 Mich. L.Rev. 1475, 1509–10 (1972)), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). We accordingly disagree with the decision of the district court insofar as it imposed upon plaintiffs-appellants the entire burden of the unauthorized charges made by Blumenfeld to the Corporate and Platinum Accounts. *See Minskoff,* 1995 WL 527694 at *8.

However, while we accept the proposition that the *acquisition* of a credit card through fraud or theft cannot be said to occur under the apparent authority of the cardholder, our statement in *Towers* should not be interpreted to preclude a finding of apparent authority for the subsequent *use* of a credit card so obtained. Under the rule urged by plaintiffs-appellants, a cardholder could disregard both credit card and bank statements indefinitely, or even fail to act upon a discovery that an employee had fraudulently obtained and was fraudulently using a credit card, and still limit his liability for an employee's fraudulent purchases to $50. *Cf. Transamerica Ins. Co. v. Standard Oil Co.,* 325 N.W.2d 210, 215 (N.D.1982) ("[A]n unscrupulous cardholder could allow another to charge hundreds of dollars in goods and services and then attempt to limit his liability to 50 dollars."). Nothing in the TILA suggests that Congress intended to sanction intentional or negligent conduct by the cardholder that furthers the fraud or theft of an unauthorized card user. We therefore agree with the district court to the extent that it decided that the negligent acts or omissions of a cardholder may create apparent authority to use the card in a person

who obtained the card through theft or fraud. *See Minskoff,* 1995 WL 527694 at *4—*6. Apparent authority created through the cardholder's negligence does not, however, retroactively authorize charges incurred prior or to the negligent acts that created the apparent authority of the user.

Applying these principles to the case at hand, we address the district court's conclusion that plaintiffs-appellants' failure to examine credit card and bank statements amounts to negligence which created an appearance of authority in Blumenfeld to use the card. *See id.* at *6. Under New York law, consumers are obligated to "exercise reasonable care and promptness to examine [bank] statement[s] ... to discover [any] unauthorized signature or any alteration." N.Y.U.C.C. § 4–406(1); *see also Transamerica,* 325 N.W.2d at 215 (describing identical North Dakota statute). This provision is derived from a common law obligation to examine bank statements and report forgeries or alterations, and it is based upon a determination that "the depositor [is] in the better position to discover an alteration of the check or forgery of his or her own signature." *Woods v. MONY Legacy Life Ins. Co.,* 84 N.Y.2d 280, 284, 617 N.Y.S.2d 452, 453, 641 N.E.2d 1070, 1071 (1994) (extending application of N.Y.U.C.C. § 4–406 to brokerage accounts).

This policy is no less applicable to credit card holders than it is to bank depositors. Once a cardholder has established a credit card account, and provided that the card issuer is in compliance with the billing statement disclosure requirements of 15 U.S.C. § 1637,[4] the cardholder is in a superior position to determine whether the charges reflected on his regular billing statements are legitimate. A cardholder's failure to examine credit card statements that would reveal fraudulent use of the card constitutes a negligent omission that creates apparent authority for charges that would otherwise be

---

4. Section 1637(b) requires "[t]he creditor of any account under an open end consumer credit plan [to] transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth," *inter alia,* the outstanding balance in the account at the beginning and end of the statement period, the amount and date of each extension of credit during the period, the amount of any finance charge added to the account, and the date by which payment must be made to avoid finance charges.

considered unauthorized under the TILA. *See Transamerica*, 325 N.W.2d at 215.

It is undisputed that between April 1992 and November 1993, American Express mailed to Equities' business address at least twenty-eight monthly billing statements documenting charges made to the Platinum and Corporate Accounts. Each of those statements clearly lists Blumenfeld as a cardholder, and each specifically itemizes those charges attributable to her credit card. During that same period, MHT mailed to Equities' business address numerous bank statements showing that checks made payable to American Express had been drawn on Equities' business account and Minskoff's personal account to pay these American Express charges. Minskoff concedes that he failed to examine any of these statements until November 1993, and no other employee or agent of Equities (other than Blumenfeld) became aware of the disputed monthly payments to American Express prior to the inquiry by Bankers Trust in November 1993. These omissions on the part of plaintiffs-appellants created apparent authority for Blumenfeld's continuing use of the cards, especially because it enabled Blumenfeld to pay all of the American Express statements with forged checks, thereby fortifying American Express' continuing impression that nothing was amiss with the Corporate and Platinum Accounts.

Plaintiffs-appellants argue that summary judgment is inappropriate because they exercised reasonable care in the hiring and supervision of Blumenfeld and in the implementation and administration of internal accounting procedures designed to detect and prevent fraud. In this case, however, while American Express concedes that Equities employed bookkeepers who were responsible, *inter alia,* for reviewing credit card statements and arranging for their payment, as well as reviewing bank statements and cancelled checks, the inadequate manner in which these procedures were performed from April 1992 to November 1993 enabled Blumenfeld to acquire unauthorized American Express credit cards, run up more than $300,000 in invalid American Express charges, and pay for them with approximately twenty forged checks drawn on Equities' MHT account and Minskoff's personal MHT account, without detection.

A cursory review of any of the American Express statements would have disclosed charges by Blumenfeld made with an unauthorized credit card. A review of any MHT statement would have disclosed one or more payments to American Express (or, if the cancelled checks had previously been removed by Blumenfeld, charges that could not be matched to cancelled checks) generally in amounts far exceeding Minskoff's habitual American Express charges. We are not dealing in this case with an occasional transgression buried in a welter of financial detail. In our view, once a cardholder receives a statement that reasonably puts him on notice that one or more fraudulent charges have been made, he cannot thereafter claim lack of knowledge. The district court was justified in determining that no reasonable jury could conclude that this standard had been satisfied as to plaintiffs-appellants on the record presented in this case, warranting summary judgment in favor of American Express to the extent that we have previously indicated.

In our view, the appropriate resolution in this case is provided by adapting the ruling in *Transamerica* to provide that

> [American Express] is liable for [Blumenfeld's] fraudulent purchases [as to each credit card] from the time the credit card was issued until [plaintiffs-appellants] received the first statement from [American Express] containing [Blumenfeld's] fraudulent charges plus a reasonable time to examine that statement. After that time, [plaintiffs-appellants are] liable for the remaining fraudulent charges.

325 N.W.2d at 216. We accordingly vacate the judgment of the district court and remand for further proceedings to make this determination. We leave it to the district court in the first instance to ascertain whether, as the record is developed on remand, any issues require submission to a jury.

## Conclusion

The judgment of the district court is vacated and the case is remanded for further proceedings. The parties shall bear their own costs.