928 A.2d 48 (2007)
394 N.J. Super. 595
NEW CENTURY FINANCIAL SERVICES, INC., Plaintiff-Respondent,
v.
Lee B. DENNEGAR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 2007.
Decided July 17, 2007.
*49 Stephen M. Goldberg argued the cause for appellant (Mr. Goldberg and Johanna D. Roccanova, on the brief).
Mitchell L. Williamson, Springfield, argued the cause for respondent (Pressler and Pressler, attorneys; Mr. Williamson, on the brief).
Before Judges WEFING, C.S. FISHER and MESSANO.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider whether defendant was properly held liable for a credit card debt despite his contention that he never applied for or used the credit card. Because the evidence supported the trial judge's determination that defendant either expressly applied for the card, or authorized his roommate  to whom he ceded authority over his finances  to apply for and use the card, we affirm the judgment entered in plaintiff's favor.

I
The testimony revealed that AT & T Universal (AT & T) issued a credit card in the name of defendant Lee Dennegar (defendant) on or about February 1, 2001, that it thereafter sent monthly statements to defendant's home, and that $14,752.93 was due and owing when the debt was eventually assigned to plaintiff New Century Financial Services, Inc. (plaintiff).
Defendant asserted that he had no knowledge of this account. The evidence revealed that defendant lived in West Orange with a Mark Knutson from 1999 to 2000; they subsequently moved to 55 Thompson Street in Raritan in 2000. This home was owned by defendant. Knutson had no funds or income, and defendant's funds were used to pay the mortgage on the Raritan home, and all other household expenses, as they had been in West Orange.
Defendant testified that he had suffered a nervous breakdown in September 2001 and had been hospitalized for a period of time as well. Prior to his breakdown and until Knutson's death on June 22, 2003, defendant had allowed Knutson to manage their household's financial affairs and the "general office functions concerned with maintaining the house." Defendant admitted during his testimony that he allowed Knutson "to handle all the mail" and "left to [Knutson's] discretion to open [the mail] and to do with it as he chose." As a result, Knutson wrote out checks for defendant to sign, although defendant testified that he "rarely signed checks at all." In fact, defendant testified that he then knew that "Knutson was signing [defendant's] name to many of the checks," and that he had no objection to this course of conduct.
Once Knutson died, defendant learned that Knutson had incurred obligations in *50 his name of which he was not previously aware. Not long thereafter, plaintiff commenced this suit in the Special Civil Part to collect from defendant the amount of the outstanding debt. At the conclusion of the trial, the judge found that "defendant created the situation where someone else would utilize his financial resources to pay for the joint expenses." He held that either defendant or Knutson had opened this account in February 2001 and that defendant was liable for the debt that thereafter accrued. Judgment was entered in favor of plaintiff in the amount of $14,752.93 plus costs.
On appeal, defendant argues that the trial judge (1) erroneously admitted hearsay evidence and (2) abused his discretion in denying defendant the right to seek additional discovery from plaintiff. In addition, defendant contends that (3) the evidence failed to demonstrate the formation of a contract between AT & T and defendant, or that Knutson had the apparent authority to act for defendant, and (4) plaintiff or its assignor failed to comply with the requirements of the Truth In Lending Act (TILA), 15 U.S.C.A. §§ 1601 to 1667.

II
We find insufficient merit in Points I and II to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following brief comments.
In Point I, defendant argues, among other things, that the trial judge erred by admitting in evidence AT & T monthly statements that were sent to defendant's home, claiming they constituted hearsay and that plaintiff failed to lay a sufficient foundation for their admission under the business records exception to the hearsay rule, N.J.R.E. 803(c)(6). We observe that defendant did not object to the admission of these exhibits during the trial, and conclude that the judge acted well within his discretion in making this and all his other evidence rulings. Benevenga v. Digregorio, 325 N.J.Super. 27, 32, 737 A.2d 696 (App.Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000).
In Point II, defendant contends that the judge erred by not acceding to his request at the start of the trial for additional time to seek discovery from plaintiff. In fact, defendant had previously moved for leave to conduct additional discovery. The judge had granted that motion and permitted defendant an additional twenty days to serve discovery requests, while directing plaintiff to respond to any such requests within twenty days of service. Plaintiff, however, propounded no such discovery requests. Instead, defendant served plaintiff's counsel with a notice in lieu of subpoena, R. 1:9-2, requesting the production of numerous documents at the time of trial. In response, plaintiff provided monthly statements and a few other documents at the time of trial, but did not provide documents that may have fallen within the numerous, very broad categories listed in defendant's notice in lieu of subpoena. The judge denied defendant's oral request for an adjournment of the trial and for leave to conduct additional discovery.
We find no abuse of discretion in the judge's denial of defendant's oral application. The judge had earlier granted defendant leave to conduct discovery after the close of the discovery period, but defendant failed to take advantage of that opportunity. We lastly observe that defendant's attempt to replace normal discovery procedures by serving a notice in lieu of subpoena was inappropriate. Pressler, Current N.J. Court Rules, comment 2 on R. 1:9-2 (2007).

*51 III
We also find no merit in defendant's assertion that he could not be found liable through the application of either (a) common law principles, or (b) the Truth in Lending Act.

A
Because plaintiff could not affirmatively demonstrate that defendant entered into an agreement with AT & T, plaintiff was left with attempting to prove that Knutson was defendant's agent and acted within the scope of that agency relationship or, if Knutson exceeded his authority through forgeries or other fraudulent conduct, that defendant  having placed Knutson in the position to abuse his authority  should bear the risk of loss.
The trial judge found that defendant had authorized Knutson to conduct the financial affairs of their household prior to the time that the AT & T account was opened and until Knutson's death in 2003, by which time the AT & T account had gone into default. We discern from the judge's decision that he found that defendant, as principal, had appointed Knutson as his agent for the conducting of his financial affairs. See Restatement (Second) of Agency, § 26 (observing that "authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account").
Although the finding of Knutson's authority to deal with household bills through the utilization of defendant's funds does not necessarily compel a finding that Knutson was authorized to borrow funds or make purchases based on defendant's credit, we conclude that the judge implicitly and correctly found that Knutson was authorized to act in this latter respect as well.
The judge found that defendant admitted having "a poor memory" and "it may well be that his memory with regard to this account is just not allowing him to remember" the circumstances of its formation, or even whether it was defendant himself who entered into the relationship with AT & T. Moreover, even if defendant did not expressly open the AT & T account, the judge found that "it seems that Mr. Knutson was given authority to open this account [for defendant's] benefit." The evidence amply supports this finding. As defendant testified, Knutson was authorized to open defendant's mail, to attend to the mail as he saw fit, to make out checks on defendant's checking account, and to even sign defendant's names to those checks.
In addition, defendant acknowledged that some of the charges on the account were the type of purchases that Knutson was authorized to make for the household. And the monthly statements, which were mailed by AT & T to defendant's home, reveal that payments were periodically made. Although a complete record of these statements was not moved into evidence, monthly statements ranging from February 2002 to January 2003 were available and were admitted into evidence. They reveal that payments were made to AT & T against the outstanding balance on April 3, 2002, May 8, 2002, May 21, 2002, September 10, 2002, October 10, 2002, November 8, 2002, and December 10, 2002.[1] *52 This evidence fairly supports the inference the judge implicitly drew that either defendant or Knutson obtained the credit card from AT & T; and, if the latter, the evidence of the activity on the AT & T account, together with the surrounding circumstances of defendant having ceded his authority over incoming mail, his checkbook, and his finances, amply supported the judge's finding that Knutson was authorized by defendant to obtain and use the credit card.
Moreover, even if Knutson abused the authority given him by defendant, the application of the rule of law described by Justice Proctor for the Court in Ross Systems v. Linden Dari-Delite, Inc., 35 N.J. 329, 338, 173 A.2d 258 (1961) renders defendant liable for the debt:
The general rule is that a principal is accountable for the conduct of his agent acting within the scope of his authority even though the conduct is unauthorized and the principal receives no benefit from it, e.g., Mick v. Corp. of Royal Exchange Assur., 87 N.J.L. 607, 613-615, 91 A. 102 (E. & A.1914). The reason for the rule is that though the agent may have deceived the principal as well as the victim, since the principal placed the agent in the position where he had the power to perpetuate the wrong, the principal rather than the innocent third party should bear the loss.
Because the trial judge found as a fact that Knutson was authorized by defendant either to enter into the credit relationship with AT & T or, assuming defendant himself actually entered into the relationship, that Knutson was authorized to utilize the credit card, the consequence of any misuse or fraudulent use by Knutson is to be borne by defendant, not AT & T or its assignee. And, despite defendant's forceful argument to the contrary, it does not matter whether defendant gained a benefit from Knutson's actions. Mick, supra, 87 N.J.L. at 614, 91 A. 102 (holding that "irrespective of the question of benefit, the principal is liable for the fraud of the agent acting within the scope of his authority").

B
Defendant lastly argues that the TILA precluded the entry of a judgment against him for the balance due on this account. We find no merit in this contention. Congress enacted the credit card provisions of the TILA "in large measure to protect credit cardholders from unauthorized use." Towers World Airways Inc. v. PHH Aviation Sys. Inc., 933 F.2d 174, 176 (2d Cir.), cert. denied, 502 U.S. 823, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). As a result, the TILA credit card provisions were designed to strictly limit the cardholder's liability for "unauthorized" charges, 15 U.S.C.A. § 1643(a)(1), by, among other things, placing the burden of establishing cardholder liability on the card issuer, 15 U.S.C.A. § 1643(b), and imposing criminal sanctions for the fraudulent use of credit cards, 15 U.S.C.A. § 1644.
In seeking to avoid liability, defendant relies on that part of the TILA that renders the cardholder liable for unauthorized charges "only if" the card "is an accepted credit card," the liability does not exceed $50, the card issuer has given "adequate notice to the cardholder of the potential liability," the card issuer "has provided the cardholder with a description of the means by which the card issuer may be notified of loss or theft of the card," the unauthorized use "occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur," and the card issuer has provided "a method whereby the user of such card can be identified as the person authorized to use it." 15 U.S.C.A. § 1643(a)(1).
*53 These protections, however, only limit the cardholder's liability for the credit card's "unauthorized" use. Congress defined "unauthorized use," within the context of 15 U.S.C.A. § 1643, as "a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C.A. § 1602(o). The courts in DBI Architects, P.C. v. Am. Exp. Travel-Related Serv. Co., Inc., 388 F.3d 886 (D.C.Cir.2004) and Minskoff v. Am. Exp. Travel Related Serv. Co., Inc., 98 F.3d 703 (2d Cir.1996) dealt with similar circumstances that are fairly applicable to the matter at hand. In those cases, employees had fraudulently obtained credit cards in the name of their employers; the credit card issuer thereafter monthly billed the employers, revealing the uses to which the unfaithful employees had made of the cards, which, for a period of time, went unnoticed by the employers. The courts in those cases concluded that the employers' failure to exercise reasonable care created apparent authority for the employees' use of the cards. DBI Architects, supra, 388 F.3d at 890; Minskoff, supra, 98 F.3d at 709-10.
As indicated earlier, we interpret the trial judge's findings here as consistent with a determination that defendant either obtained the credit card on his own, or that he authorized Knutson to enter into the relationship with AT & T. Although the judge did not make specific findings regarding the TILA's provisions,[2] the only rational findings permitted by the evidence, as interpreted by the judge in his oral decision, was that defendant was, at best, careless or negligent with regard to his finances as were the cardholders in DBI Architects and Minskoff. As held by the court in Minskoff, a "cardholder's failure to examine credit card statements that would reveal fraudulent use of the card constitutes a negligent omission that creates apparent authority for charges that would otherwise be considered unauthorized under the TILA." 98 F.3d at 709-10. And, as the court in DBI Architects held, in relying upon and quoting from Minskoff, as a policy matter "cardholders are in a better position than card issuers to discover fraudulent charges, and that `[n]othing in the TILA suggests that Congress intended to sanction intentional or negligent conduct by the cardholder that furthers the fraud or theft of an unauthorized card user.'" DBI Architects, supra, 388 F.3d at 891 (quoting Minskoff, supra, 98 F.3d at 709). In adhering to these decisions, we conclude that the proper application of the TILA's provisions requires a determination that the debt in question had been permitted to accrue through defendant's intentional, careless or negligent conduct, and that, as a result, the TILA imposes no obstacle to plaintiff's recovery.[3]
Affirmed.
NOTES
[1] Defendant's argument that some unknown third person may have assumed his identity and obtained the card is unsupported by any evidence and is particularly preposterous in light of the fact that payments were made on the account against the statements that were mailed to defendant's home.
[2] This is understandable since defendant never pleaded AT & T's alleged breach of the TILA or otherwise argued that liability could not be imposed because of the TILA until making a brief mention of this argument in his written summation.
[3] Plaintiff has also argued that because it is the assignee of the card issuer, 15 U.S.C.A. § 1602(f), the defenses regarding unauthorized uses contained in 15 U.S.C.A. § 1643 do not apply, citing Neff v. Capital Acquisitions & Management Co., 238 F.Supp.2d 986 (N.D.Ill. 2002). We need not reach this argument in light of our disposition of defendant's contentions regarding the TILA.