Antonietta M. **PUGLIESE**, Plaintiff,

v.

**UNITED TECHNOLOGIES CORPORATION,**
Defendant.

Civil No. 3:06CV01013 (AVC).

United States District Court,
D. Connecticut.

April 28, 2008.

Dale James Morgado, Moukawsher & Walsh, Thomas G. Moukawsher, Ian O. Smith, Moukawsher & Walsh, Hartford, CT, for Plaintiff.

Corey J. Brinson, Victoria Woodin Chavey, Day Pitney LLP, Hartford, CT, for Defendant.

### RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALFRED V. COVELLO, District Judge.

This is an action for damages, declaratory and injunctive relief in which the plaintiff, Antonietta Pugliese, claims breach of fiduciary duty and breach of contract. The claims are brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. §§ 1001, et. seq.) and common law tenets concerning breach of contract.

The defendant, United Technologies Corporation ("UTC"), has filed the within motion for summary judgment pursuant to Fed.R.Civ.P. 56 arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

The issues presented are: 1) whether certain human resources representatives, namely Ralph Monschein and Gary Nester, were acting as agents of UTC such that their acts would be deemed the acts of the company; 2) whether, if acting as agents, either Monschein, Nester, or both, made material misrepresentations regarding ERISA plan benefits; and 3) whether

the communication between Walter Morin and Pugliese regarding her continued presence on payroll through May resulted in the formation of a contract which was subsequently breached.

For the reasons that follow, UTC's motion for summary judgment is DENIED.

### FACTS

Examination of the complaint, pleadings, Local Rule 56 statements, and the exhibits accompanying the motion for summary judgment, and the responses thereto, discloses the following, undisputed, material facts:

Antonietta Pugliese worked for UTC for just over 37 years. Pugliese spent her last several years at the Pratt & Whitney division in Middletown. As an employee of UTC, Pugliese belonged to the International Association of Machinists and Aerospace Workers ("IAM"), a union subject to regularly renegotiated collective bargaining agreements. Such renegotiations affect, among other things, retirement benefits. Pugliese was aware both that her contract was subject to renegotiation and that new contracts generally provided better benefits.

Pugliese participated in the UTC Pension Plan, under which and pursuant to ERISA, UTC was the plan administrator. The parties agree that UTC was acting as a fiduciary in that capacity. As plan administrator, UTC provided employees with information regarding the benefits plan. UTC conveyed such information through a number of avenues, including a summary plan description distributed to all plan participants. The summary plan description directed employees to the Human Resources department in case of problems, questions, or concerns. The summary also described the delegation of responsibilities to certain departments and individuals, including the designation of "significant responsibilities to the Senior Vice President, Human Resources and Organization."

In 2004, Pugliese began considering the optimal time to retire. In order to make this determination, Pugliese met twice with a human resources representative, Ralph Monschein. At those meetings, Monschein and Pugliese discussed possible retirement options. Monschein expressed that the ultimate decision was Pugliese's. Pugliese planned on retiring after she turned 65 in January 2005.

In May 2004, a Pratt & Whitney newsletter, "The Runway," featured an article discussing recent negotiations between the IAM in Connecticut and Hamilton Sundstrand, a sister UTC division. The article highlighted certain benefits provided by the new contract and included language indicating that the renegotiation with Hamilton Sundstrand was merely one in "a series of negotiations between UTC and the IAM in Connecticut." The newsletter was distributed throughout Pratt & Whitney.

Also in May 2004, at the request of the Human Resources department, Pugliese met with one Gary Nester, another human resources representative who reported to Monschein. Prior to this meeting, Pugliese had never met Nester. During the meeting, which lasted about 15 minutes, Nester inquired as to Pugliese's intentions regarding potential retirement. Pugliese responded that she intended to retire after turning 65. Nester then began urging Pugliese to consider retiring earlier, informing her that the new contract would not be as good and that the company was downsizing. Pugliese left the meeting feeling pushed into retirement.

Subsequent to the meeting with Nester, Pugliese again met with Monschein. Like Nester, Monschein represented that retiring now would be most advantageous, and

he provided Pugliese with information regarding the benefits she would receive upon her immediate retirement. Pugliese understood the comments from both Monschein and Nester to mean that retiring immediately would provide her with optimal benefits.

Pugliese subsequently met with her direct supervisor, Walter Morin, regarding her meeting with Nester and her possible retirement. He informed her that, should she decide to retire immediately, she would be kept on payroll until the end of the month, receiving several weeks pay. Relying on this promise and the information from Nester and Monschein that immediate retirement would provide her with optimal benefits, Pugliese retired, effective June 1, 2004. She was kept on the payroll only until May 15, 2004.

In October 2004, UTC began discussions with IAM regarding a new contract. The new contract became effective in December 2004 and would have provided Pugliese with, among other things, an increase in weekly severance pay from $44 to $50. Had Pugliese retired after turning 65, in January 2005, she would have benefitted from the new contract.

### STANDARD

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... [and] it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### DISCUSSION

### I. COUNT ONE—Breach of Fiduciary Duty

#### A. Monschein and Nester as agents of UTC

■ UTC argues that Pugliese has failed to prove the essential elements of her ERISA claim. Specifically, UTC argues that Pugliese has not established "that an ERISA fiduciary made an affirmative misrepresentation that was material ... concerning an ERISA plan benefit."

■ Generally, the threshold question for a breach of fiduciary duty claim under ERISA is whether the alleged misrepresentations were in fact made by an ERISA fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). ERISA provides in relevant part: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The United States Court of Appeals for the Second Circuit has stated: "ERISA imposes duties *only* upon plan administrators and other 'fiduciaries'... [it] does not authorize suits for money damages against nonfiduciaries." *Mullins v. Pfizer,* 23 F.3d 663, 666 (2d Cir.1994) (emphasis added).

Pugliese concedes that Nester and Monschein are not ERISA fiduciaries, but argues that they are nonfiduciary agents of UTC, an ERISA fiduciary, such that their acts should result in UTC's liability.

UTC admits that it is an ERISA fiduciary as plan administrator but argues that Pugliese has failed to prove that Monschein and Nester are agents with respect to the benefits plan. Specifically, UTC asserts that there is no evidence indicating that Monschein and Nester "had been designated or chosen by the company as resources or spokespersons to employees on benefits issues."

■ The district court of Connecticut has stated: "[a] corporate fiduciary is responsible for any material misstatements or omissions made by the agents it chooses to help fulfill its fiduciary obligations." *Broga v. Northeast Utilities,* 315 F.Supp.2d 212, 245 (D.Conn.2004) (citing *Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982, 988 (3d Cir.1995)). Such liability is limited, however, to "those employees on whom plan participants reasonably rely for important information and guidance about retirement" because "such individuals operate, at a minimum, within their apparent authority to provide such information and guidance to plan participants, on behalf of the plan administrator." *Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982, 988 (3d Cir.1995).

■ The Second Circuit has stated that apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Green Door Realty Corp. v. TIG Ins. Co.,* 329 F.3d 282, 289 (2d Cir.2003) (internal quotations omitted)(alteration in original). Consequently, "apparent authority is normally created through the words and conduct of the principal as they are interpreted by a third party." *Green Door Realty Corp. v. TIG Ins. Co.,* 329 F.3d 282, 289 (2d Cir.2003) (internal quotations omitted).

The Second Circuit has stated: "[t]he existence of apparent authority is normally a question of fact and therefore inappropriate for resolution on a motion for summary judgment." *Minskoff v. American Express Travel Related Servs. Co.,* 98 F.3d 703, 708 (2d Cir.1996). Thus, the question of whether Monschein and Nester were acting in the capacity of agents raises a genuine issue of fact inappropriately resolved through summary judgment.

Based on all of the foregoing, the motion for summary judgment is DENIED with respect to Count One.

## II. COUNT TWO—Breach of Contract

UTC next argues that Pugliese's claim for breach of contract fails because "there was no offer or acceptance with regard to all essential terms and conditions of the alleged contract."

Pugliese responds that "the company promised her several weeks pay and then reneged on its promise," breaching the oral agreement between herself and Morin.

 To prevail on a claim for breach of contract, a plaintiff must provide "evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment...." *Torosyan v. Boehringer Ingelheim Pharm., Inc.*, 234 Conn. 1, 15, 662 A.2d 89 (1995) (internal quotations omitted) (alteration in original).

 "[I]n cases involving implied employment contracts, the terms of which must be gleaned from ... the totality of the employment relationship ... definitive contract language is obviously lacking, and the intent of the parties remains a question of fact to be determined by the jury." *Manning v. Cigna Corp.*, 807 F.Supp. 889, 895–96 (D.Conn.1991). Additionally, "Connecticut law ... requires the trier of fact ... to determine the precise terms of an implied contract and whether any of those terms were breached." *Heller v. Champion Int'l Corp.*, 891 F.2d 432, 435 (2d Cir. 1989).

The undisputed evidence reflects a specific communication between Morin and Pugliese by and through which Morin conveyed that Pugliese would remain on payroll until June 1, 2004, if she retired immediately. The determination of whether these communications formed a contract depends upon whether Morin intended to undertake a contractual commitment. Such a fact specific issue cannot be resolved on a motion for summary judgment.

Therefore, summary judgment is DENIED with respect to Count Two.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (document no. 63) is DENIED. It is so ordered, this 25th day of April, 2008, at Hartford, Connecticut.