**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FRED J. PETERS, an individual,

             Plaintiff - Appellant,

v.

DISCOVER BANK, is a business entity form unknown,

             Defendant - Appellee.

No. 14-55485

D.C. No. 5:12-cv-01837-TJH-OP

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted April 8, 2016
Pasadena, California

Before: FARRIS, SENTELLE[**], and M. SMITH, Circuit Judges.

      Plaintiff-Appellant Fred J. Peters (Peters) appeals from the district court's

grant of summary judgment. We affirm in part and reverse in part.

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

     [**]    The Honorable David Bryan Sentelle, Senior Circuit Judge for the U.S. Court of Appeals for the District of Columbia Circuit, sitting by designation.

**1.**     The district court correctly granted summary judgment on the California identity theft law claim. California Civil Code § 1798.93 provides that a victim of identify theft—defined by reference to California Penal Code §§ 530.5 and 530.55 to include obtaining and using a credit card number for fraudulent purposes—can bring an action against a "claimant" and is entitled to various forms of relief. Peters presented evidence that his secretary made fraudulent charges on his Discover card of approximately $21,985 over a four-year period, leading to associated interest charges and late fees. Peters reported the fraud to Defendant-Appellee Discover Bank (Discover), and Peters's wife worked with Discover to identify and cancel the fraudulent charges.

The evidence presented at summary judgment showed that during the 90 days before Peters reported the fraud, the total charges, legitimate and fraudulent, including interest, totaled $7,566.08. Over the long course of attempting to address the fraudulent charges, Discover credited Peters at least $16,000. After Discover's attempt to reconcile the account, some charges remained, although Peters believed he owed less than Discover claimed. Discover last attempted collection on October 8, 2011, when it sought payment of $607. Peters maintains that under the proper calculations, he owed no more than $458 in legitimate charges.

2

The Fair Credit Billing Act requires that if a consumer obligor submits a written notice to a creditor within sixty days of a billing statement indicating the obligor's belief that the statement contains a billing error—defined to include "an extension of credit which was not made to the obligor"—the creditor must either correct the account and send an explanation of the correction, or explain why the creditor believes the statement was correct. 15 U.S.C. § 1666(a), (b)(1).

Here, Peters argues that he was entitled to credits beyond a sixty day period because his secretary prevented him from discovering the fraud. However, as compared to Discover, Peters was in a better position to detect the fraud.

Very similar facts were at issue in *Minskoff v. American Express Travel Related Services Company, Inc.*, 98 F.3d 703 (2d Cir. 1996). A business hired an assistant to its president. The assistant promptly had an additional credit card issued in her name, and later upgraded the president's card, and hers, to platinum accounts, allowing her to make a total of over $412,000 in fraudulent charges. *Id.* at 706-07. The *Minskoff* plaintiffs argued that 15 U.S.C. § 1643(a)(1)(B) placed the loss from an "unauthorized" use of a credit card onto the issuer. *Id.* at 708.

The Second Circuit largely rejected this argument, holding that principles of agency law governed whether a use was "unauthorized," such that viewed in the light most favorable to plaintiffs, the assistant acted without actual or implied

authority when she obtained the cards, but that the plaintiffs were still liable for the bulk of the charges because they failed to review their credit card and bank statements. *Id*. at 709. While Peters is not asserting 15 U.S.C. § 1643(a)(1)(B), *Minskoff* is consistent with California Commercial Code § 4406(c), which requires customers to "exercise reasonable promptness" in examining bank statements for unauthorized charges. It thus "imposes a duty upon a customer to act promptly in discovering and reporting forgeries and alterations." *Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal.App.4th 1051, 1065 (1995).

Although Peters argues that his secretary's alteration of the statements prevented him from reviewing them, Peters admitted that he did not appropriately monitor his secretary. Peters could have reviewed account statements before they went to his secretary, and he acknowledged that had he done so, he "definitely" would have stopped the embezzlement sooner. Peters could "easily" tell whether or not he was the source of a Discover card charge "simply by looking at the statement." When Peters finally examined a bank statement, he "immediately noticed numerous transactions he never authorized." Peters therefore failed in his duty to "act promptly in discovering and reporting forgeries and alterations." *Roy Supply*, 39 Cal.App.4th at 1065.

Further, Peters incurred more in legitimate charges after the fraud than Discover attempted to collect from him after the fraud. At Peters's deposition, Discover's counsel reviewed the billing statements with Peters line by line, asking if each was legitimate. By that method, it was determined that Peters had made, and not paid Discover for, $1,612.22 in legitimate charges. And Discover's counsel excluded any charge that Peters stated was not his—even though some clearly were—so the figure was conservative.

Peters weakly attacks this figure, pointing to a correction to his deposition testimony and a subsequent declaration from his wife. However, neither source controverts the factual basis for the calculation. Because $1,612.22 is more than the $607 Discover attempted to collect, Discover was not asserting a "claim" arising out of the identity theft.

Accordingly, the district court did not err in granting summary judgment on the California identity theft law claim.

2.     The district court correctly granted summary judgment on the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) claim for the same reasons applicable to the identity theft law claim. The Rosenthal Act provides, inter alia, that a debt collector (1) shall cease collection activities upon specified written notice from the debtor of identity theft, (2) may recommence debt collection only

after making a good faith determination that the debtor is responsible for the specific debt in question, and (3) shall notify consumer credit reporting agencies to delete the information if collection activities cease. Cal. Civ. Code § 1788.18(a), (d), (g). Discover argues, and Peters does not contest, that to the extent this claim relates to credit reporting, it is preempted by the FCRA. Accordingly, the claim at issue relates only to the debt collection portion of California Civil Code § 1788.18.

Because Peters was not entitled to refunds in an amount greater than $1,612.22, Discover did not attempt to collect on charges from the identity theft, but instead was only seeking to collect on Peters's legitimate charges. Accordingly, the district court did not err in granting summary judgment on the Rosenthal Act claim.

**3.** The district court erred in granting summary judgment on the Fair Credit Reporting Act (FCRA) claim. "[A] credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citations omitted).

Peters presented evidence that Discover told his wife not to make any further payment on the account until its fraud investigation was completed, and that

Discover never provided such notification. And, Peters presented evidence that at least one Discover agent told his wife that the account would be "zeroed out." Thus, Peters presented evidence that it was inaccurate for Discover to have reported the account as "past due," as it did repeatedly, although inconsistently.

Additionally, Peters presented evidence that Discover consistently reported a "high balance" of $12,791. This was $5,791 over Peters's $7,000 credit limit, and Peters presented evidence showing that this resulted not from his overuse of the card, but instead, from the way that Discover accounted for Peters's bank's refund request. Peters's card balance ballooned to $12,791 in the spring of 2011 when Discover charged back the refunds it made to Peters's bank as a result of the bank's fraud report. While Discover appears to have later cancelled the vast bulk of those charges, Peters presented evidence that Discover never corrected its credit reporting concerning the high balance.

Accordingly, genuine issues of material fact remained, so the district court erred in granting summary judgment on the FCRA claim.

4.     The district court erred in granting summary judgment on the California Consumer Credit Reporting Agencies Act (CCRAA) claim. The CCRAA provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person

knows or should know the information is incomplete or inaccurate." *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (internal quotation marks omitted). Because "we operate under the assumption that California courts would interpret the FCRA and CCRAA consistently," the "incomplete or inaccurate" criteria of the CCRAA is governed by *Gorman's* "patently incorrect or materially misleading" standard. *Id*. at 890 (internal quotation marks omitted).

Accordingly, genuine issues of material fact remained, so the district court erred in granting summary judgment on the CCRAA claim.

**5.** We do not reach Discover's argument concerning Peters's damages, which were not addressed in the district court's summary judgment ruling.

AFFIRMED IN PART AND REVERSED IN PART. Each party shall bear its own costs.